676 So.2d 1068 (1996)
STATE of Louisiana
v.
Sydney SMITH.
No. 95-K-0061.
Supreme Court of Louisiana.
July 2, 1996.
Rehearing Denied September 3, 1996.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, and Jack Peebles, Asst. Dist. Attorney, for Applicant.
Sherry Watters, New Orleans, for Respondent.
JOHNSON, Justice.[*]
We granted certiorari in this case to determine whether the defendant's right against double jeopardy was violated. After the trial concluded, a jury convicted defendant of both manslaughter and second degree feticide. He was sentenced to concurrent terms of 30 years at hard labor and 10 years at hard labor respectively. Defendant appealed his convictions to the fourth circuit. The appellate court pretermitted relator's constitutional challenge to the facial validity of Louisiana's feticide statute along with his argument that the trial court's sentences were excessive. However, they concluded that because "the same evidence" used to convict defendant of manslaughter was also used to convict him of second degree feticide, his rights against double jeopardy were violated. The conviction and sentence for second degree feticide were vacated but the conviction for manslaughter was affirmed. The sentence for the manslaughter conviction was also vacated with the case being remanded for resentencing. State v. Smith, 94-0621, 647 So.2d 1321 (La.App. 4th Cir.1994). For the reasons that follow, we hold that there was no violation of defendant's right against double jeopardy, reverse the decision rendered by the court of appeal, and reinstate the convictions and sentences imposed by the trial court.

FACTS AND PROCEDURAL HISTORY
The facts of this matter are undisputed. Defendant and decedent, Rosalyn Collins were living together in an apartment in New Orleans, Louisiana. During the evening hours of June 17, 1993, the couple apparently argued over defendant's drinking. Defendant choked Ms. Collins and then fell asleep. After being unsuccessful in trying to wake *1069 her the next morning, defendant asked decedent's sister, Wanda Trepagnier and her boyfriend, Kenneth Bodden to accompany him to their apartment. Paramedics were summoned to the scene. Cornell Wolfe, an emergency medical technician testified at trial that when he touched the victim, she was cold and that rigor mortis had set in.
Luther Lumpkin of the New Orleans Police Department was the first officer to arrive at the scene. At trial, Officer Lumpkin testified that the victim's bedroom indicated that a struggle had taken place because things had been knocked around and the mattress was pushed off the bed. Defendant informed Ms. Trepagnier, Mr. Bodden, Mr. Wolfe and Officer Lumpkin that he strangled the victim.
On August 5, 1993, the state charged defendant in a single bill of information with second degree murder and second degree feticide. The charges stemmed from the deaths of both Ms. Collins and the fetus she carried. After the trial was complete, defendant was convicted of manslaughter for killing Ms. Collins. The jury found him guilty on the charge of second degree feticide.
On appeal, defendant's conviction and sentence was affirmed in part, vacated in part and remanded. In his application to the court of appeal, defendant argued that the trial court erred in denying his motion to quash the indictment based on a violation of his right against double jeopardy. The court of appeal agreed finding that because the same evidence used to convict defendant of manslaughter was also used to convict on the charge of second degree feticide. The court stated that "it is apparent that the defendant's convictions for manslaughter and second degree feticide violate his right against double jeopardy."[1]

DISCUSSION
Both the United States and the Louisiana Constitutions protect individuals against the peril of twice being put in jeopardy for the same offense. In pertinent part, the Fifth Amendment of the U.S. Constitution provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Similar language is contained in the Louisiana Constitution. See La. Art. 1 § 15.[2]
Protection against double jeopardy is divided into three fundamental guarantees, namely: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and, (3) protection against multiple punishment for the same offense. State v. Mayeux, 498 So.2d 701 (La.1986). North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1989).
Louisiana courts have applied two distinct tests to determine whether offenses are the same for double jeopardy purposes. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the U.S. Supreme Court set out a precise rule of law to determine if a double jeopardy violation has transpired. The Blockburger test is as follows:
"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two different offenses or only one, is whether each provision requires proof of an additional fact which the other does not."
See State v. Coody, 448 So.2d 100 (La.1984); State v. Vaughn, 431 So.2d 763 (La.1983); State v. Knowles, 392 So.2d 651 (La.1980); and State v. Doughty, 379 So.2d 1088 (La. 1980).
The other standard employed by our courts is the "same evidence" test. This test tell us:
"If the evidence required to support a finding of guilt of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a *1070 conviction, not all of the evidence introduced at trial."
See Coody, supra at 102; Vaughn, supra at 766; and State v. Steele, 387 So.2d 1175 (La.1980). Also see State v. Miller, 571 So.2d 603 (La.1990).
Additionally, with instances involving multiple punishment, legislative intent must be examined. Even when offenses are the same because each crime does not require proof of a fact that the other does not or because the evidence required to sustain a conviction for one offense may also sustain a conviction for the other, a clear expression of the legislature may overcome the presumption against multiple punishment and sanction cumulative penalties in a single proceeding. In Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the court stated "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."[3] In each instance, legislative intent must be ascertained. If the legislature has failed to reveal its intention, courts should proceed cautiously and remain sensitive to the interests of both the defendant and society. All relevant evidence must be considered and common sense will often be the most useful technique. See State v. Smith, 475 So.2d 331 (La.1985).
Because the court of appeal set aside the conviction for second degree feticide using the same evidence test, our focus will be directed there. The jury convicted defendant for both manslaughter and second degree feticide. Louisiana R.S. 14:31.A defines manslaughter as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
Feticide is not a crime which is suis generis to our state. California defines murder, in part as the unlawful killing of a "human being or fetus with malice aforethought."[4] Arizona punishes the killing of an unborn child as fetal manslaughter.[5] Indiana punishes feticide as a Class C felony and is defined as the knowing or intentional termination of pregnancy, with the intention other than to produce life.[6] In Louisiana, the crime of feticide was added by acts 1989, No. 777 § 1 and is classified into three categories, First degree, Second degree or Third degree.[7] Second degree feticide is defined in La.R.S. 14:32.7 as:
(1) The killing of an unborn child which would be first degree feticide, but the offense is committed in sudden passion or heat of blood immediately caused by the provocation of the mother of the unborn child sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a first degree feticide if the jury finds that the offender's blood had actually cooled, or that an average *1071 person's blood would have cooled, at the time the offense was committed.
(2) A feticide committed without any intent to cause great bodily harm:
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 32.6 (first degree feticide), or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be first degree feticide under Article 32.6.
Since this court has never faced the underlying issue, we look to other jurisdictions. In Ward v. State, 262 Ga. 293, 417 S.E.2d 130 (1992), following a jury trial, the defendant was convicted of several crimes including murder and feticide. Ward contended that state law precluded a conviction for both murder of the mother and feticide. The Georgia Supreme Court disagreed and affirmed the convictions finding that Ward's analysis was improper. The court stated "the `"same evidence"' of an accused may support his conviction of more than one crime so long as one crime is not included in the other as a matter of law or fact." Ward, supra at 137.
In People v. Shum, 117 Ill.2d 317, 111 Ill.Dec. 546, 512 N.E.2d 1183 (1987), defendant was convicted of murder, feticide and other crimes. Shum argued that his feticide conviction should have been reversed because it arose from the single act of killing the mother. In affirming his convictions for both feticide and murder, the Supreme Court of Illinois stated "in the instant cause of action there were two distinct victims of the defendant's single action, Gwendolyn Whipple and her unborn child." Shum, supra, 111 Ill.Dec. at 564, 512 N.E.2d at 1201. On appeal to the U.S. Supreme Court, the petition for writ of certiorari was denied. See Keith Shurn v. Illinois (No. 87-6014) 484 U.S. 1079, 108 S.Ct. 1060, 98 L.Ed.2d 1022 (1988); Rehearing denied, 485 U.S. 1015, 108 S.Ct. 1492, 99 L.Ed.2d 719 (1988).
Although defendant was charged with committing second degree murder, the jury found that the evidence introduced at trial proved defendant's act in killing Ms. Collins equated to manslaughter. Expert testimony showed that the victim suffered a fracture of the hyoid bone and was four months pregnant when she died at the hands of defendant.[8] Undoubtedly, the evidence used to convict defendant of manslaughter, i.e. his strangulation of the victim, was the underlying cause for the fetus' death, therefore, the court of appeal concluded that defendant's multiple convictions violated his right against double jeopardy because the "same evidence" was used.
This conclusion is flawed for several reasons. While an argument may be made such that the principles of double jeopardy may prohibit successive trials for second degree murder and second degree feticide, or even manslaughter and second degree feticide if the "same evidence" is used to convict a defendant of murder or manslaughter for the death of the mother and then for the termination of the unborn fetus, such argument is meritless. The facts of this case show that defendant's convictions resulted in cumulative punishments and were obtained at a single proceeding, therefore, we look to the intent of the legislature.
As an element of manslaughter (La.R.S. 14:31), the legislature explicitly states that a homicide or killing of an individual must take place.[9] As an element of second degree feticide or any other grade, the legislature states that the killing of an unborn child must take place. Therefore, it is abundantly clear that the legislature intended that the two instant *1072 crimes are separate and distinct, and are not lesser or included offenses of each other.[10]
Applying the principle of "common sense" enunciated in State v. Smith, supra, had the legislature not intended that a perpetrator be penalized separately for killing an unborn child where the mother is also killed, it would not have made feticide a crime. The two statutes were aimed at different evils which proves that the court of appeal erred when the conviction for second degree feticide was set aside based on the "same evidence" test. Killing the mother was an element of manslaughter, not second degree feticide, whereas killing of the unborn child was an element of second degree feticide and not manslaughter. These two crimes involve different elements and require different proof. Hence, the jury did not violate the defendant's right against double jeopardy when it imposed separate punishments.

DECREE
For the reasons assigned, the Fourth Circuit's judgment is reversed and this case is remanded to the court of appeal to consider any remaining assignments of error consistent with the views expressed herein.
REVERSED AND REMANDED.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge with the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part II, § 3. The panel included Justice Johnson, Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball and Victory.
[1] Id. at 1326.
[2] In part, the article states "No person shall be twice placed in jeopardy for the same offense, except on his application for new trial, where mistrial is declared, or when a motion in arrest of judgment is sustained."
[3] Id. 459 U.S. at 366, 103 S.Ct. at 678.
[4] Cal.Penal Code § 187.
[5] A.R.S. § 13-1103(A)(5) ("[k]nowing or recklessly causing the death of an unborn child at any stage of its development by any physical injury to the mother ... which would be murder if the death of the mother had occurred.").
[6] I.C. XX-XX-X-X.
[7] La.R.S. 14:32.5.
[8] Dr. Richard Tracey, an expert in forensic pathology performed the autopsy and testified that the victim was four months pregnant and evidence at trial proved that defendant was aware of the pregnancy. Also, Dr. Tracy testified that the hyoid bone is little bone located at the base of the tongue which can only be broken during manual strangulation. He further testified that the fetus was alive at the time of the mother's death and appeared to be progressing normally. See court of appeal opinion at 1323.
[9] See La.R.S. 14:29.
[10] See La.R.S. 14:5.