686 So.2d 984 (1996)
STATE of Louisiana
v.
Derrick WOODBERRY.
No. 95-KA-2402.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 1996.
*986 Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, New Orleans, for Appellee.
Frank G. Desalvo, Laura Gasiorowski, New Orleans, for Appellant.
Before LOBRANO, JONES and MURRAY, JJ.
LOBRANO, Judge.
Defendant, Derrick Woodberry, was indicted for the July, 1994 aggravated rape, aggravated crime against nature, second degree kidnapping and armed robbery of R.G. and the July, 1994 armed robbery of Alfred Taylor, violations of Louisiana Revised Statutes 14:42, 14:89.1, 14:44.1 and 14:64, respectively.
Defendant was arraigned on September 7, 1994 and pled not guilty to all counts.
On October 21, 1994, defendant's suppression motions were denied. Following a three day trial beginning March 20, 1995, defendant was found guilty of sexual battery on count one, crime against nature on count two, guilty as charged of second degree kidnapping on count three, simple robbery on count four and first degree robbery on count five.
The trial court denied defendant's motion for a new trial on May 2, 1995.
On June 2, 1995, defendant was sentenced to eight years at hard labor on his conviction for sexual battery; five years at hard labor on his conviction for crime against nature; *987 thirty-five years at hard labor with two years without benefit of probation, parole or suspension of sentence on the conviction for second degree kidnapping; five years at hard labor on the conviction for simple robbery and ten years at hard labor without benefit of probation, parole or suspension of sentence on the conviction for first degree robbery. All sentences were to run concurrently.
Defendant appeals his conviction and sentence alleging the following assignments of error.
1. The one-on-one identification was suggestive.
2. The court erred in admitting Alfred Taylor's pretrial testimony at the trial in lieu of live testimony.
3. It was error for the State to fail to produce the rap sheet of Alfred Taylor and to secure Taylor's presence at the trial.
4. Defendant's convictions for sexual battery and crime against nature violate the double jeopardy clause because the same conduct supported his conviction for second degree kidnapping.
5. Defendant's sentences are unconstitutionally excessive.

FACTS:
On July 4, 1994, at approximately 11:00 p.m., fifteen year old R.G. was outside of her home on Werner Street in New Orleans conversing with her friend, Alfred Taylor. They were leaning against Taylor's white Toyota Tercel. The pair noticed a male subject, later identified as defendant, approaching them. Defendant was wearing a blue tank top, blue and white striped shorts, high top tennis shoes and walked with a noticeable limp.
Defendant pulled out a chrome revolver and pointed it at R.G. and Taylor and ordered the pair to get into Taylor's car. Defendant then demanded and took $3.00 dollars from R.G. A struggle ensued between Taylor and defendant. Defendant struck Taylor in the face, took his car keys and pushed him into the car. Within minutes Taylor jumped from the car and ran away. R.G., who was seated in the front passenger seat, also considered running from the car until defendant threatened to shoot her in the back.
Defendant then drove R.G. to an unknown location near Downman Road in New Orleans. As they drove, R.G. stared at defendant hoping to be able to identify him if she survived the attack. When defendant noticed her staring, he became angry and struck her in the mouth, knocking out one of her teeth. Once stopped, defendant ordered R.G. to undress. He then removed his shorts and proceeded to rape R.G. He then demanded and took R.G.'s jewelry. Defendant then drove R.G. to another location. During this drive, defendant ordered R.G. to perform oral sex. She complied.
After arriving at the second location, defendant placed R.G. face down on the car seat and raped her anally. During the attack, defendant punched R.G. in the eye causing bruising and swelling. Following the rape, defendant ordered R.G. out of the car and threatened to shoot her if she screamed. Defendant then left the scene. R.G. located a telephone and called her boyfriend who, along with his mother, drove her to the police station.
R.G. related what had happened to rape detectives and gave all pertinent descriptive information. Meanwhile, another report was being given by Taylor at R.G.'s home. Taylor gave the police a description of his vehicle and of defendant. These descriptions were broadcast to police units in the area. R.G. was transported by detectives to her home so that she could change her clothes before going to the hospital. At her home she was met by the officers who had interviewed Taylor. Prior to leaving for the hospital, R.G. and Taylor were informed that a suspect was in custody. R.G. and Taylor were taken by the police to the Willowbrook Apartment Complex where defendant was being held.
Defendant was apprehended after Taylor's car was chased by police into the apartment complex. Once inside the complex, defendant and the driver, Michael Mercadel, abandoned the vehicle. Police, on foot, searched the complex. Defendant was eventually apprehended behind a building. Mercadel was *988 also apprehended. The chrome revolver was found in a muddy area near the car. R.G.'s jewelry was found inside the car.
After viewing the defendant, both R.G. and Taylor immediately and simultaneously identified him as their assailant. Defendant was then arrested.
At trial, defendant's defense was one of alibi.
Trenita Woodberry, defendant's sister, testified that defendant telephoned her around 11:00 p.m. on July 4, 1994 and requested that she pick him up from a friend's house in New Orleans east. She and her aunt, Lisa Bell, picked up defendant and all three went to Club Whispers on Lake Forest Boulevard. They stayed at the lounge for one and one-half hours. Ms. Woodberry then stated she drove defendant to his apartment in the Willowbrook complex.
Darnell Youngblood testified that she saw defendant at Club Whispers on the night of July 4, 1994. They had a conversation. When she left the lounge at 1:00 a.m. defendant was still there.
Defendant took the stand in his own behalf. He denied any involvement in the crime. He stated he spent most of the day at a friend's home. He stated that around 11:00 p.m., he telephoned his sister and asked to be picked up from the friend's house. His sister and his aunt then went with him to Club Whispers. They stayed until 1:30 a.m. After they left, his sister drove him to his apartment at Willowbrook Apartments. As he was walking to his apartment, he stopped to speak to a neighbor. They went inside his apartment for several minutes. They then left his apartment and he walked his neighbor to her apartment in the next building. As he was returning to his apartment, he was stopped by a uniformed police officer. The officer asked his name. He responded "Derrick Milton". He testified he gave a false name because he was scared. He was then placed in handcuffs and put into a police car. After approximately forty-five minutes, the officers asked him to step out and stand by the car. After several minutes he was ordered back into the car. He was eventually placed under arrest and taken to Central Lockup.

ASSIGNMENT OF ERROR NO. 1:
Defendant asserts the victims' one-on-one identification was suggestive and not reliable.
One-on-one identifications are generally not favored but are permissible when justified by the overall circumstances. This is particularly true when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the crime scene. State v. Walters, 582 So.2d 317, 321 (La.App. 4th Cir.1991), writ denied, 584 So.2d 1171 (La. 1991). Five factors should be considered in determining whether the identification gave rise to a substantial likelihood of misidentification: 1) the victim's opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the victim during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the victim's certainty displayed at the time of the identification; and 5) the length of time elapsed between the crime and the identification. Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Even identifications made while a suspect is in handcuffs or in a police car will not necessarily render the identification procedure suggestive or indicate that there is a "substantial likelihood of misidentification". See, State v. Valentine, 570 So.2d 533 (La.App. 4th Cir.1990); State v. Muntz, 534 So.2d 1317 (La.App. 4th Cir.1988); State v. Amos, 550 So.2d 272 (La. App. 4th Cir.1989).
In the instant case, R.G. and Taylor identified defendant several hours after the crimes. After being taken to the Willowbrook Apartments, R.G. and Taylor remained inside the police car. Defendant was taken out of the police car in which he was being held. Defendant stood next to the police car. Neither victim was told to identify defendant. They were told defendant was a possible suspect. R.G. and Taylor identified defendant as the perpetrator. At trial, both victims testified that they were not influenced or threatened in anyway to identify defendant. *989 Both victims were adamant in their identification of defendant.
Even, assuming arguendo, that the identification procedure was suggestive, application of the factors enunciated in Manson v. Brathwaite, supra, clearly shows the identification did not give rise to a substantial likelihood of misidentification.
Both R.G. and Taylor had sufficient time to view defendant during the commission of the crime, especially R.G. The area in front of R.G.'s home was a well lighted area. Defendant was face to face with the victims throughout the commission of the crimes. Taylor testified that for the ten to fifteen minutes he was in defendant's presence, they were "eyeball to eyeball". R.G. was with defendant for approximately two hours after he kidnapped her.
Both victims described defendant as a tall black male, wearing a blue tank top, blue and white striped shorts, high top tennis shoes and walking with a limp. At trial, defendant admitted he had broken his leg several months prior to the crimes and usually wore a leg brace. In addition, both victims were very positive that defendant was their assailant. Given the overall circumstances surrounding the victims' identification of defendant, we find the one-on-one identification of defendant reliable and not suggestive.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
Defendant asserts the trial court erred in allowing the State to introduce Alfred Taylor's testimony from a pretrial suppression hearing in lieu of Taylor's live testimony at trial. Defendant argues that Taylor was not an "unavailable witness" as defined by Louisiana Code of Evidence Article 804(A)(5).[1]
Our Supreme Court in State v. Kaufman, 304 So.2d 300, 304 (La.1974), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976), enunciated the following requirements necessary before an absent witness' prior testimony is admissible at a subsequent trial: 1) the defendant must have been represented by counsel at the earlier hearing; 2) the witness testified under oath; 3) the witness was cross-examined, or else there was valid waiver of the right to cross-examination; 4) at the time of trial, the witness (whether out-of-state or not) is unavailable or unable to testify; and 5) the state has made a good-faith diligent effort to obtain the presence of the witness, including by its out-of-state subpoena powers where appropriate. See also, State v. Robinson, 423 So.2d 1053, 1058 (La. 1982); State v. Hills, 379 So.2d 740, 743-744 (La.1980); State v. West, 363 So.2d 513, 516 (La.1978).
Once the prosecution establishes witness unavailability, that witness' previous testimony is admissible if it bears adequate "indicia of reliability" which is borne out by an adequate opportunity to cross-examine the witness and whether counsel availed himself of that opportunity. These two requirements afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. Ohio v. Roberts, 448 U.S. 56, 66-75, 100 S.Ct. 2531, 2539-2543, 65 L.Ed.2d 597 (1980); Mancusi v. Stubbs, 408 U.S. 204, 214-218, 92 S.Ct. 2308, 2314-2315, 33 L.Ed.2d 293 (N.Y.1972); California v. Green, 399 U.S. 149, 155-163, 90 S.Ct. 1930, 1933-1937, 26 L.Ed.2d 489 (Cal.1970); State v. Adams, 609 So.2d 894, 896 (La.App. 4th Cir. 1992).
In the instant case, the State informed the court and defendant on the morning of trial that it could not locate Alfred Taylor. The trial court recessed for the day to allow the State to locate the witness. The State informed the court that Taylor had spoken with prosecutors several days prior to trial. He gave prosecutors an address and asked for a ride to the courthouse. In addition, *990 Taylor gave his mother's address and phone number. The prosecutor gave Taylor their phone numbers and beeper numbers. One of the prosecution investigators was assigned to pick up Taylor and bring him to court on the morning of the trial. However, when the investigators arrived to pick up Taylor, Taylor was not at the address he had given. Taylor's parents were contacted but they did not know his whereabouts. A subpoena and capias was issued for Taylor. Several investigators attempted to find Taylor to no avail.
When the court convened the next day, the State informed the court that Taylor could not be located. The State then requested that it be allowed to introduce Taylor's testimony from the suppression hearing. The trial court granted the State's request.
Taylor was an "unavailable witness" as defined by La.Code of Evidence Article 804(A)(5). He was absent from the proceedings despite the State's good faith diligent effort to locate him. Taylor's prior testimony bore the requisite "indicia of reliability" required by the Sixth Amendment. Defendant was represented by counsel at the suppression hearing and was cross-examined.
Thus, we find no error in the trial court's allowing the prior testimony to be introduced.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3:
Defendant asserts that it was error for the State to delay in producing Alfred Taylor's criminal record (rap sheet).
The due process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure, upon request, of evidence which is favorable to the accused when the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 85, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963). The Brady rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). The State is only required to disclose evidence favorable to the accused which is material to guilt or punishment. State v. Rosiere, 488 So.2d 965, 970 (La.1986).
Evidence is material only if there exist a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). The test for determining materiality is the same whether or not the defense makes a pretrial request for exculpatory evidence. Id. at 682, 105 S.Ct. at 3383.
The Bagley rule was recently clarified in Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490, (1995). The high court concluded that the State's disclosure obligation turns on the cumulative effect of all suppressed evidence favorable to the defense, not on the evidence item by item. The prosecution, which alone knows what is undisclosed, must be assigned the responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of reasonable probability is reached. Kyles, 514 U.S. at ___, 115 S.Ct. at 1567.
In the instant case, on the second day of trial, before the first witness testified, the State informed defendant that Taylor had a prior conviction for distribution of counterfeit controlled dangerous substances. The defense requested a mistrial but subsequently withdrew the request.[2]
After Taylor's testimony was read to the jury, they were informed by the Court about his prior conviction. Later, during the trial, the prosecution provided defendant with a copy of Taylor's rap sheet which revealed that Taylor had also been arrested for forcible rape. However, Taylor was subsequently acquitted of that offense. Defendant objected to the late disclosure of the rap sheet.
*991 Only offenses for which a witness has been convicted are admissible upon the issue of his credibility. La.Code of Evidence Article 609.1. Pursuant to article 609.1, defendant could not introduce evidence of, or question Taylor about, the forcible rape charge. The jury was informed of Taylor's prior conviction in 1989 for distribution of counterfeit controlled dangerous substances.
Thus, since the rape charge could not be disclosed, and the prior conviction was disclosed, there was no reasonable probability that the proceeding would have been different.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4:
Defendant asserts that his conviction for sexual battery and crime against nature violate the prohibition against double jeopardy because the same conduct supported his conviction for second degree kidnapping. We disagree.
Both the Louisiana and the United States Constitutions provide that no person shall be twice put in jeopardy of life or liberty for the same offense. U.S. Const. amend. V; La. Const. art. 1, section 15(1974). In determining whether the double jeopardy clause bars subsequent prosecution, our Supreme Court has recognized two standards. In State v. Knowles, 392 So.2d 651, 654 (La.1980), the court stated the two rules as follows:
[Under] the test in Blockburger v. United States, [284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)], ... [T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied is whether each provision requires proof of an additional fact which the other does not...
* * *
The `same evidence' test depends upon the proof required to convict, not the evidence actually introduced at trial. Thus, if evidence necessary to support the second indictment would have been sufficient to support the former indictment, double jeopardy prohibits the second prosecution. (Citations omitted).
Although recognizing these two tests, our Supreme Court has not adopted a "same transaction" test which would prohibit, on double jeopardy grounds, prosecution for different crimes committed during one sequential, continuing course of conduct. City of Baton Rouge v. Jackson, 310 So.2d 596, 598 (La.1975). Louisiana has principally relied on the broader "same evidence" test when evaluating double jeopardy claims. See, State v. Vaughn, 431 So.2d 763 (La. 1983); State v. Solomon, 379 So.2d 1078 (La. 1980); State v. Didier, 262 La. 364, 263 So.2d 322 (La.1972). Therefore, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating double jeopardy. State v. Nichols, 337 So.2d 1074, 1076-1078 (La.1976).
We also note the approach taken in the recent case of State v. Smith, 95-0061 (La.7/2/96), 676 So.2d 1068, reh'g denied, 679 So.2d 380, wherein the Supreme Court, after recognizing the Blockburger and "same evidence" test, also applied what it termed a "common sense" principle. Relying on legislative intent, the court concluded that "had the legislature not intended that a perpetrator be penalized separately for killing an unborn child where the mother is also killed, it would not have made feticide a crime." Id. at p. 10, 676 So.2d at 1072. The court found that "[k]illing the mother was an element of manslaughter, not second degree feticide, whereas killing of the unborn child was an element of second degree feticide and not manslaughter." Id.
In the instant case, defendant contends the facts underlying the convictions for sexual battery and crime against nature were used to support the conviction for second degree kidnapping.
Louisiana Revised Statute 14:43.1 sets forth the elements of sexual battery:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained *992 fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
B. Lack of knowledge of the victim's age shall not be a defense. However, where the victim is under seventeen, normal medical treatment or normal sanitary care of an infant shall not be construed as an offense under the provisions of this Section.
Louisiana Revised Statute 14:89 sets forth the elements of crime against nature.
A. Crime against nature is:
(1) The unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1 or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
(2) The solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation.
Louisiana Revised Statute 14:44.1 sets forth the elements of second degree kidnapping.
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Defendant's conviction for crime against nature was based on R.G.'s testimony that she was forced to perform oral sex on defendant.
Defendant's conviction for sexual battery was based on R.G.'s testimony that defendant vaginally and anally raped her.
Defendant argues that the elements of these crimes were included in the evidence which supported the conviction for second degree kidnapping. Defendant suggests that the conviction for second degree kidnapping was based upon R.G.'s testimony that she was sexually abused during the kidnapping which falls under subsection (A)(3) of Revised Statute 14:44.1.
However, the record shows that the prosecution did not rely on the sexual abuse component to support the charge of second degree kidnapping. Instead, the State relied on the evidence that defendant kidnapped R.G. while armed with a dangerous weapon and physically injured her. These elements fall under subsection (A)(5) of Revised Statute 14:44.1. Both R.G. and Taylor testified that defendant was armed with a gun. R.G. testified that defendant threatened to shoot her if she attempted to flee and after kidnapping her, punched her in the face knocking out one of her teeth. Defendant also punched R.G. in the eye causing bruising and swelling.
Thus, the evidence introduced to support the second degree kidnapping conviction was not the same evidence needed to support the *993 convictions for sexual battery and crime against nature. Each offense required the introduction of separate and distinct evidence. Defendant was properly prosecuted and convicted for each offense without violating double jeopardy.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5:
Defendant asserts his sentences are excessive.
Article I, Section 20 of the Louisiana Constitution of 1974 provides that "[n]o law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the guidelines set forth in Louisiana Code of Criminal Procedure article 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense charged. State v. Brogdon, supra, State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
The sentences imposed in the instant case are not excessive in light of the circumstances of the offenses. Defendant was armed with a gun. At gun point he forced R.G. into Taylor's car. Defendant drove off with R.G., a juvenile. He raped her twice and at gun point forced her to perform oral sex. Defendant punched R.G. knocking out one of her teeth and bruising her eye and lip. After physically and sexually abusing R.G. for several hours, defendant robbed her and left her in an unknown area.
Prior to sentencing defendant, the trial court stated:
All right. The defendant comes before the Court today after being found guilty of sexual battery, first degree robbery, simple robbery, crime against nature and second degree kidnapping. I listened to the trial. I though that there were many, many aggravating circumstances present. I think there were very, very, very little mitigating circumstances present except that the defendant had no prior felony convictions. I believe that the defendant is in definite need of custodial custody, incarceration. I believe that the defendant is a danger to himself and others.
The maximum sentence for sexual battery is ten years. Defendant was sentenced to eight years. The maximum sentence for second degree kidnapping is forty years. Defendant was sentenced to thirty-five years. The maximum sentence for simple robbery is seven years. Defendant was sentenced to five years. The maximum sentence for first degree robbery is forty years. Defendant was sentenced to ten years without benefit of probation, parole or suspension of sentence.
Defendant's sentences are within the statutory ranges for all the convictions and are fully supported by the circumstances of the case. The trial court did not abuse its discretion in sentencing defendant.
This assignment of error is without merit.
For the foregoing reasons, defendants convictions and sentences are affirmed
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] La.Code of Evidence Article 804(A)(5) provides:

A. Definition of unavailability. Except as otherwise provided by this code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside court. This includes situations in which the declarant:
* * *
(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.
[2] It is not clear from the record whether defendant sought a mistrial as a result of the late disclosure of Taylor's prior conviction or Taylor's unavailability for trial.