MIRIAM G. WALTZER, Judge.
On 1 September 1994, relator was indicted on one count of aggravated rape, one count of aggravated crime against nature, one count of second degree kidnapping, and two counts of armed robbery. Trial began on 20 March 1995. After a three day jury trial, the relator was found guilty of sexual battery on count one, crime against nature on count two, guilty as charged of second degree kidnapping on count three, simple robbery on count four, and first degree robbery on count five.
Relator was sentenced on 2 June 1995. The district court imposed a sentence of eight years at hard labor on the conviction for sexual battery, five years at hard labor on the conviction for crime against nature, thirty-five years at hard labor with two years without benefit of parole on the conviction for second degree kidnapping, five years at hard labor on the conviction for simple robbery, and ten years at hard labor without benefit of parole on the conviction for first degree robbery. The sentences are to be served concurrently. Relator’s convictions and sentences were affirmed on appeal. State v. Woodberry, 95-2402, (La.App. 4th Cir.12/27/96), 686 So.2d 984, writ denied 97-0277 (La.6/20/97), 695 So.2d 1351.
*640 In pro se writ 97-K-2577, this court found no merit to ineffective assistance of counsel claims raised by relator in an application for post-conviction relief. The Supreme Court denied the relator’s writ of review, State ex rel. Woodberry v. State, 98-0486 (La.7/2/98), 721 So.2d 908.
|2The relator came back before this Court in a pro se writ, 2000-K-0440, which was actually a motion to recuse the trial judge at the time, Judge Buras.[1] In it, he stated that he intended to file an application for post-conviction relief. Relator did not provide this court with a copy of his specific claims, but he indicated that he intended to allege discrimination in the selection of the grand jury foreperson under Campbell v. Louisiana, 528 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) and to raise a Brady claim. This court transferred the relator’s motion to recuse the trial judge because it had not been filed in the district court.
A review of the docket master indicates that the trial court ordered that the motion to recuse be randomly allotted to a section other than Section “H.” Throughout 2000 and 2001, the case was set for status hearings in Section “L” during which counsel for the relator sometimes appeared and sometimes the relator appeared; many times the matter was reset because the relator was not transported.from jail. At some point in late 2000, reference was made to the relator filing a post conviction relief application. It also appeared that the relator moved to recuse the Section “L” trial judge, Judge Alarcon.[2] Finally, on 16 January 2002, the matter was ordered reallotted to a section other than “H” or “L.”
On 15 March 2002, the relator and his counsel appeared in Section “C” for a hearing on his application for post conviction relief. The State filed a motion to dismiss the application on procedural grounds. After hearing oral argument, the trial court denied the post conviction relief application. On 28 March 2002, counsel for relator filed a written notice of intent to seek writs. The court set a return date for 20 May 2002.[3]

STATEMENT OF THE FACTS

The facts as set forth in the appellate opinion in this case are as follows:
On July 4, 1994, at approximately 11:00 p.m., fifteen year old R.G. was outside of her home on Werner Street in New Orleans conversing with her friend, Alfred Taylor. They were leaning against Taylor’s white Toyota Tercel. The pair noticed a male subject, later identified as defendant, approaching them. Defendant |swas wearing a blue tank top, blue and white striped shorts, .high top tennis shoes and walked with a noticeable limp.
Defendant pulled out a chrome revolver and pointed it at R.G. and Taylor and ordered the pair to get into Taylor’s car. Defendant then demanded and took $3.00 dollars from R.G. A struggle en *641 sued between Taylor and defendant. Defendant struck Taylor in the face, took his car keys and pushed him into the car. Within minutes Taylor jumped from the car and ran away. R.G., who was seated in the front passenger seat, also considered running from the car until defendant threatened to shoot her in the back.
Defendant then drove R.G. to an unknown location near Downman Road in New Orleans. As they drove, R.G. stared at defendant hoping to be able to identify him if she survived the attack. When defendant noticed her staring, he became angry and struck her in the mouth, knocking out one of her teeth. Once stopped, defendant ordered R.G. to undress. He then removed his shorts and proceeded to rape R.G. He then demanded and took R.G.’s jewelry. Defendant then drove R.G. to another location. During this drive, defendant ordered R.G. to perform oral sex. She complied.
After arriving at the second location, defendant placed R.G. face down on the car seat and raped her anally. During the attack, defendant punched R.G. in the eye causing bruising and swelling. Following the rape, defendant ordered R.G. out of the car and threatened to shoot her if she screamed. Defendant then left the scene. R.G. located a telephone and called her boyfriend who, along with his mother, drove her to the police station.
R.G. related what had happened to rape detectives and gave all pertinent descriptive information. Meanwhile, another report was being given by Taylor at R.G.’s home. Taylor gave the police a description of his vehicle and of defendant. These descriptions were broadcast to police units in the area. R.G. was transported by detectives to her home so that she could change her clothes before going to the hospital. At her home she was met by the officers who had interviewed Taylor. Prior to leaving for the hospital, R.G. and Taylor were informed. that a suspect was in custody. R.G. and Taylor were taken by the police to the Willowbrook Apartment Complex where defendant was being held.
Defendant was apprehended after Taylor’s car was chased by police into the apartment complex. Once inside the complex, defendant and the driver, Michael Mercadel, abandoned the vehicle. Police, on foot, searched the complex. Defendant was eventually apprehended behind a building. Mercadel was also apprehended. The chrome revolver was found in a muddy area near the car. R.G.’s jewelry was found inside the car.
After viewing the defendant, both R.G. and Taylor immediately and simultaneously identified him as their assailant. Defendant was then arrested.
At trial, defendant’s' defense was one of alibi.
Trenita Woodberry, defendant’s sister, testified that defendant telephoned her around 11:00 p.m. on July 4, 1994 and requested that she pick him up from .a friend’s house in New Orleans east. She and her aunt, Lisa Bell, picked up defendant and all three went to Club Whispers on Lake Forest Boulevard. They stayed at the lounge for one and one-half hours. Ms. Woodberry then stated she drove defendant to his apartment in the Willowbrook complex.
1¿Darnell Youngblood testified that she saw defendant at Club Whispers on the night of July 4, 1994. They had a conversation. When she left the lounge at 1:00 a.m. defendant was still there.
Defendant took the stand in his own behalf. He denied any involvement in *642 the crime. He stated he spent most of the day at a friend’s home. He stated that "around 11:00 p.m., he telephoned his sister and asked to be picked up from the friend’s house. His sister and his aunt then went with him to Club Whispers. They stayed until 1:30 a.m. After they left, his sister drove him to his apartment at Willowbrook Apartments. As he was walking to his apartment, he stopped to speak to a neighbor. They went inside his apartment for several minutes. They then left his apartment and he walked his neighbor to her apartment in the next building. As he was returning to his apartment, he was stopped by a uniformed police officer. The' officer asked his name. He responded “Derrick Milton”. He testified he gave a false name because he was scared. He was then placed in handcuffs and put into a police car. After approximately forty-five minutes, the officers asked him to step out and stand by the car. After several minutes he was ordered back into the car. He was eventually placed under arrest and taken to Central Lockup.
State v. Woodberry, pp. 3-5, 686 So.2d at 987-88.

DISCUSSION

In his writ application, the relator argues that the trial court erred in denying the application for post conviction relief, in particular, the claim regarding the grand jury foreperson selection and counsel’s failure to raise the claim pretrial. The relator concedes that the application was his second, but argues that the grand jury claim in particular should be considered because the evidence upon which it is based was not known until 9 July 2001 when the evidentiary hearing was conducted in the Trainor.
The relator’s post conviction relief application, which was actually filed pro - se, contains five claims. The first is that there was no probablfe cause for the indictment on counts one and three. This claim obviously could have been raised pri- or to trial, during the appeal, or in his first application and thus should be barred under La.C.Cr.P. art. 930.4. In any event lack of probable cause for an indictment or following a preliminary hearing is moot after conviction. State v. Daniels, 25, 833, p. 2 (La.App. 2 Cir. 3/30/94), 634 So.2d 962, 963-964.
The relator’s second claim in his application is that the selection of the grand jury foreperson violated the constitution because of the exclusion of African-Americans, see Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998). However, a challenge to the grand jury indictment, including one based on racial discrimination in the selection of the foreperson, must be raised pretrial in a motion to quash or it is waived. Deloch v. Whitley, 96-1901 (La. 11/22/96), 684 So.2d 349; State v. Pierre, 99-3156 (La.App. 4 Cir.7/25/01), 792 So.2d 899. Thus, there was no error in the denial of relief on the second claim.
The relator’s third claim in his post conviction relief was actually the request to recuse Judge Buras and is moot.
The relator’s fourth claim in his post conviction application is that the evidence was insufficient to convict him on the charge of second degree kidnapping. Because this claim could have been raised on appeal or in the first post conviction relief application and was not, it is barred under C.Cr.P. art. 930.4.
The relator’s fifth claim is that his trial counsel was ineffective because he failed to file the pretrial motion to quash the grand jury indictment. At the 15 *643 March hearing, the State strenuously argued that the relator could have raised his claim in his prior post conviction relief application, in which he raised various other ineffective counsel claims. Present counsel for the relator suggested that trial counsel and the relator could not have known about the claim prior to the eviden-tiary hearing conducted in the Trainor case, which hearing was held after the first application had been filed.
Even assuming that the relator should be excused from failing to raise an ineffective counsel claim based on Campbell v. Louisiana, which was decided in 1998, in his 1997 application, the relator’s claim is without merit. There are two-prongs to an ineffective counsel claim. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126. In order to prevail, the defendant must show both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. Brooks; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741.
Whether or not trial counsel’s conduct was deficient in 1994 when he failed to file a pretrial motion to quash need not be reached, as the relator has not demonstrated any prejudice in this case. Notably, he was charged by grand jury indictment, but only one of the charges against him, aggravated rape, was required to be charged by indictment. Furthermore, he was not convicted .of aggravated rape; he was convicted of a lesser, non-indictable, offense. Finally, |firelator fails to demonstrate in any way that, even if he had been successful in a motion to quash, he would not have been reindicted.
The trial court did not err when it denied relief to the relator. The court’s ruling is affirmed.
AFFIRMED.

. The relator’s case was originally allotted to Section H, and he was tried before Judge McKay. Judge Buras was the successor to Judge McKay.

. According to the writ application, counsel sought to transfer the case from Judge Alar-con because Judge Alarcon had testified as a witness in State v. Trainor, in which the district court found that the statute setting forth the procedure to select the Orleans Parish grand jury foreperson was unconstitutional. The Trainor matter is pending before the La. Supreme Court under docket number 2001-KA-2799.

.Although the return date is beyond thirty days from the ruling, in violation of the Uniform Rules, the relator did file by the return date, and the writ should be considered timely-