11 STEVEN R. PLOTKIN, Judge.
There are two issues in this appeal. The first is whether the trial court committed reversible error in admitting a witness’ prior testimony over the defendant’s objection. The second issue is whether trial counsel was ineffective for failing to require the State to prove a witness’ unavailability and in failing to request that a certain portion of the witness’ prior statement be stricken from the transcript.
PROCEDURAL HISTORY
The defendant, Emanuel Randall, was indicted for the second-degree murder of *1064 Tiffany Sabatier.[1] The defendant pled not guilty at his arraignment. The defendant was found guilty as charged after a jury trial. The defendant filed a motion for new trial, which was denied, by the trial court. The defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. This Court in State v. Randall, unpub., 98-1683 (La.App. 4 Cir. 7/26/2000), 786 So.2d 979, conditionally affirmed the defendant’s conviction and remanded the case to the trial court to determine whether a witness’ entire prior testimony was introduced at the trial. The trial court conducted an evidentiary | ¡.hearing and determined that witness’ entire testimony was presented to the jury.
STATEMENT OF FACTS[2]
Pamela Savatiere[3] testified that on May 13, 1992, she and her fourteen-year-old daughter, Tiffany, were visiting Emily Johnson, who lived in the Fischer Housing Project. Some time into the visit, Pamela and Emily were on the porch when the defendant, who was nicknamed “Chocolate,” walked up and warned them to go inside because there was going to be some shooting. Ms. Savatiere said that she saw a gun at his side. She and Emily went inside, and Tiffany came from the back of the apartment into the living room. Ms. Savatiere testified that when she heard the shooting begin, she told everyone to hit the floor. One bullet entered the apartment and struck Tiffany in the head, killing her. Dr. Susan Garcia, who performed the autopsy on Tiffany, testified that the bullet caused rapid, if not instantaneous, death.
Officer John Treadaway, who was qualified as an expert in firearms examination, testified that he examined two spent .38 caliber bullets, one received from the Coroner’s Office and the other recovered at the scene of the shooting. He also examined three spent Winchester nine-millimeter cartridge casings recovered from the scene. He determined that the cartridge casings all came from the same gun, but he was unable to determine if the two bullets were fired from the same gun, although they had the same general rifling characteristics.
Detective Anthony Small testified that he investigated the homicide of Tiffany Savatiere. He found one bullet hole in the window of Apartment ID, | ¡¡which was Emily Johnson’s apartment, two bullets holes in the door of Apartment 2D, which was the apartment of Leroy Kovich[4] and located upstairs from Ms. Johnson’s apartment. Detective Small also testified that he learned that earlier on the day of the shooting, there had been an altercation between a Miss Dugre and a relative of the defendant, who had struck Miss Dugre’s daughter. Miss Dugre flagged down a police car, and a near riot ensued after which the defendant’s relative was arrested.
Emily Johnson testified that while she was outside sweeping the defendant came up to her, put his hands over hers, and told her that there was going to be some shooting. She did not see anyone else *1065 next to him but she did see two young men standing nearby. She heard a young woman upstairs yelling, “Bitch come on outside because you’re the cause of my nine year old nephew going to jail.” She said that the defendant then walked away and that Pam Savatiere pushed everyone inside. She heard shots, fell to the floor, and saw Tiffany lying on top of her two-year-old child. She denied seeing the defendant with a gun.
Detective Dwight Deal testified that Ko-vich told him and Small that he did not see what types of weapons were used to shoot at his apartment. Detective Deal also took a statement from the defendant in which the defendant stated that he had a .38 caliber gun. Leroy Kovich testified that he was the target of the shooting because his girlfriend’s daughter had had altercations with a young man with whom she went to school. He stated that he believed that the young man was related to Wool-ridge. He also stated that prior to the shooting there had been a riot involving the two children who had been in an altercation. Just before the |4shooting, he heard someone knocking loudly on his door and when he opened the door, he saw three teenage girls standing there. He testified that the girls were Woolridges and that they verbally abused him. He then saw three young men out in the grassy area in front of the building, and these men were looking upstairs. He identified them as Chocolate, L .C., and Marcus. He said that the men all had guns in their hands. He could not identify what type of guns L.C. and Marcus had because he kept his eyes on Chocolate who, he said, “was prone to shoot.” He said that Chocolate’s gun was an automatic and that he told the police that it sounded like a nine-millimeter. When he saw the guns, he ran back into his apartment and heard several shots. He testified that there was no doubt in his mind that the gun in Chocolate’s hand was not a .38 caliber.
Mark Jordan testified that he was not with the defendant when the defendant approached Emily Johnson and warned her that there was going to be shooting. He also denied being mad at Kovich for calling the police about his cousin and denied having a gun and shooting at the time of the offense. L.C. Woolridge invoked his Fifth Amendment privilege as to most questions. He did admit that he knew the defendant, who was his first cousin. He denied that he knew Kovich or that he saw Kovich on the night of May 13,1992.
The defendant testified that he arrived home some thirty minutes after the riot, which took place between L.C.’s brother, mother, and cousin. He stated that he was approached by L.C. and Mark Jordan who told him that they wanted to see the person who caused the incident and do what they had to do. He testified that Mark was carrying a .38 revolver and that L.C. was carrying a .357 revolver. The defendant said that he had a nine-millimeter Barretta and admitted that he was always armed. He testified that he saw Emily Johnson, for whom he used to baby[sit,,.; and warned her that there was going to be some shooting. He further testified that his sister, Iesha, and his cousin, La-shon, knocked on Kovich’s door. He said that Kovich came out, started cursing, and waved his hand around, which the defendant said led him to believe that Kovich was armed. The defendant stated that after he hollered that Kovich had a gun, he, Mark, and L.C. drew their weapons. He stated that Mark fired one shot and that then L.C. fired his gun. The defendant testified that he fired three shots into the air as he ran from the scene. He further testified that he lied in his statement to the police when he said that he had the .38 revolver because Detective *1066 Deal had told him that Tiffany had been shot with a nine-millimeter.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENTS OF ERROR 1 AND 2

The defendant complains that the trial court erred when it admitted Kovich’s prior testimony from his co-defendants’ trial. The defendant also argues that his trial counsel was ineffective for failing to require the State to prove that Kovich was unavailable and for failing to request that a certain portion of Kovich’s testimony be stricken from the transcript.
The defendant claims that his counsel was ineffective in failing to object to the admission of Kovich’s statement. A review of the trial transcript reveals that defense counsel did object to the introduction of Kovich’s prior testimony. When the State tried to introduce the statements the following exchange transpired:
MR. BLAIR: Just for the record only, I’d like to object because I didn’t have an opportunity to Cross Examine this witness.
IfiTHB COURT: Objection noted, sir. Let’s proceed, State.
MS. GRAHAM: Your Honor, I would also like to make it clear that it was Defense counsel’s request that this transcript be read in lieu of Mr. Ko-vich’s presence.
MR. BLAIR: I would like to have Mr. Kovich here they tried so I guess it so be it.
THE COURT: Let’s go forward.
The State contends that this last comment by Mr. Blair was a waiver of the objection. We instead interpret this comment to mean that he would have preferred having Kovich present at trial as opposed to having the transcript read into the record.
The issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rale on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency 17prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 *1067 Cir.1992). Although defense counsel’s comments were somewhat ambiguous, leading to multiple interpretations, this does not make the Strickland showing which would require a reversal.
CONFRONTATION CLAUSE
An absent witness’ prior testimony may be presented at trial if the party relying on the testimony can prove that the witness is unavailable. Determining the unavailability of a witness is a preliminary question for the court. La.Code Evid. art. 104(A). Such determinations are reviewed for manifest error, and will not be overturned, absent an abuse of the trial court’s discretion. The use of the prior testimony must not impinge on the defendant’s constitutional right to confront and cross examine adverse witnesses, as guaranteed by the Sixth Amendment of the United States Constitution. State v. Hills, 379 So.2d 740, 743-44 (La.1980). La. C.E. art. 804(B)(1) provides that testimony given as a witness at another hearing of the same or a different proceeding may be admitted if the party against whom lathe testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
The following five conditions must be met before a transcript from a prior hearing may be introduced as evidence at a subsequent trial: (1) the defendant must have been represented by counsel at the prior hearing; (2) the witness testified under oath; (3) the witness was cross-examined or else there was a valid waiver of the right to cross-examination; (4) at the time of trial, the witness was unavailable or unable to testify; and, (5) the State made a good-faith diligent effort to obtain the presence of the witness. State v. Ball, 2000-2277 (La.01/25/02), 824 So.2d 1089; State v. Hills, 379 So.2d at 743-44.
In State v. Woodberry, 95-2402, p. 8 (La.App. 4 Cir. 12/27/96), 686 So.2d 984, 989, this Court stated:
Once the prosecution establishes witness unavailability, that witness’ previous testimony is admissible if it bears adequate “indicia of reliability” which is borne out by an adequate opportunity to cross-examine the witness and whether counsel availed himself of that opportunity. These two requirements afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. Ohio v. Roberts, 448 U.S. 56, 66-75, 100 S.Ct. 2531, 2539-2543, 65 L.Ed.2d 597 (1980); Mancusi v. Stubbs, 408 U.S. 204, 214-218, 92 S.Ct. 2308, 2314-2315, 33 L.Ed.2d 293 (N.Y.1972); California v. Green, 399 U.S. 149, 155-163, 90 S.Ct. 1930, 1933-1937, 26 L.Ed.2d 489 (Cal.1970); State v. Adams, 609 So.2d 894, 896 (La.App. 4th Cir.1992).
Factors to be considered by the reviewing court to determine whether a confrontation clause error under La. Const. Art. I, § 16 or U.S. Const. Amend VI, include (1) the importance of the witness’ testimony in the prosecution’s case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contracting the testimony of the witness on material points; (4) the | aextent of cross-examination permitted; and (5) the overall strength of the prosecution’s case. State v. Broadway, 96-2659, p. 24 (La.10/19/98), 753 So.2d 801, 817 citing Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
In the instant case, the testimony that was introduced was Kovich’s testimony at the trial of Jordan and Woolridge. As such, defendant was not represented by counsel at the prior hearing. Thus, defendant’s counsel did not have an opportunity to cross-examine Kovieh. Although (a) Kovich was not the only witness to place *1068 the defendant at the scene of the murder and armed with a weapon; (b) the defendant testified to participating in the shooting, firing three shots, and carrying a nine-millimeter weapon; and (c) Ms. Savatiere testified that she saw the defendant with a weapon prior to the incident, after reading the transcript we cannot say that Kovich’s statement did not contribute to the jury’s verdict.
Even if the State had been able to prove that Kovich was unavailable, his statement should not have been admitted, as the defendant never had the opportunity to cross-examine Kovich. All five of the conditions set out in the case law must be met in order for the transcript to be introduced as evidence. In the instant case, it is uncontested that all of these elements were not satisfied. In fact, as the defendant points out, Jordan and Woolridge’s attorneys used Kovich’s testimony to get their clients acquitted while placing the guilt on the defendant.
Kovich testified concerning the defendant’s bad character and that the defendant had a reputation of doing a lot of shooting. Kovich testified that he left town because he was afraid the defendant was going to come after him. These statements should not have been admitted into evidence if the defendant was not going to have an opportunity to cross-examine Ko-vich. We do not find that the |inerror was harmless beyond a reasonable doubt given that Kovich was not cross examined by defendant’s counsel and Kovich’s testimony was used to acquit Randall’s co-defendants.

CONCLUSION

For the foregoing reasons, we find that the trial court erred in admitting Kovich’s prior testimony. Given that defense counsel did not have the opportunity to cross examine Kovich and Kovich’s testimony at the previous trial was used to establish that the defendant committed the crime, introduction of the statements was prejudicial to the defendant.
Therefore, the defendant’s conviction and sentence are reversed and the case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ARMSTRONG, J., concurs.

. Mark Jordan and Elcee (L.C.) Woolridge were also indicted for the murder. Jordan and Woolridge were acquitted after a jury trial on September 17, 1993.

. The statement of facts is taken from the defendant’s first appeal, State v. Randall, un-pub., 98-1633 (La.App. 4 Cir. 7/26/2000), 786 So.2d 979.

. In the grand jury indictment, the surname is spelled "Sabatier." For the sake of clarity, it will be spelled "Savatiere” as it is in the trial transcript.

. In another transcript, Kovich's surname is given as "Coppage." For the sake of clarity, "Kovich” will be used as it is in the trial transcript.