434 So.2d 428 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Robert HILL, Defendant-Appellant.
No. 15337-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1983.
Rehearing Denied August 3, 1983.
*429 Donald R. Minor and Frances Baker Jack, Asst. Indigent Defenders, Shreveport, for defendant-appellant.
Richard L. Carney and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
MARVIN, Judge.
Defendant appeals his conviction of the aggravated battery of James Ashley, Jr. and the second degree battery of Cometrious Hall and his concurrent sentences, respectively, of 6½ years and 5 years, each at hard labor.
The five assignments of error briefed by defendant relate to the sufficiency of the state's response to CCrP Art. 716(C) discovery, to an answer by a police witness allegedly referring to another crime, to the sufficiency of evidence required to support the convictions under the Jackson v. Virginia[1] *430 standard, and to the alleged "excessiveness" of the sentences. Viewing the evidence in accord with the Jackson standard (most favorably to the prosecution), we affirm the convictions and the sentences.

THE FACTS
Defendant was billed with two counts of aggravated battery which arose out of a confrontation or threatened shootout between defendant and his acquaintance, Kenneth Oliver, on the grounds of a Shreveport apartment complex on December 27, 1981, in the late afternoon.
Cometrious Hall, then nine years old, was standing on the porch of her apartment building when she was shot in the back at an angle that is not shown. She was hospitalized three weeks for treatment of her injury.
Cometrious Hall's apartment building was one of four apartment buildings which faced west. Defendant was on the porch of the adjacent apartment building about 15 feet to the south. The other victim, James Ashley, was in another apartment building about 290 feet to the north of the porch where defendant was standing. Ashley's apartment building faces south. The four apartment buildings facing west are in a line with each other. The Ashley apartment building facing south is slightly to the east of the line of the apartments which face west. Kenneth Oliver was standing on the ground near the northwest corner or "side" of the Cometrious Hall building when the first shot was fired by defendant. Oliver's testimony shows that he apparently later positioned himself near and between the Ashley building and the apartment building just north of the Cometrious Hall building.
Ashley was struck by a bullet which first came through the window of his apartment, passed through Ashley's hip, and then shattered the mirror of a dresser in his bedroom.
Defendant admitted that he was given a pistol by his cousin and that he fired his pistol "at" Kenneth Oliver and "toward" Cometrious Hall when Oliver was in the "yard" at the "side" of the Cometrious Hall building and that he could have "hit" Oliver had he wanted to, but that he intentionally shot away from him. Defendant admitted that he had the pistol when Oliver turned and "walked away" from him before any shooting occurred. The jury could have rejected defendant's testimony that he fired only after Oliver turned around and threatened him with his pistol.
Oliver denied that he had a pistol or that he fired any shots and said that defendant shot his pistol four or five times. Some witnesses said that defendant had two pistols. Most of the other witnesses agreed that defendant fired "shots" in the direction of Ashley and Cometrious Hall. Some testified to "two", or to "three or four", shots. Police officers testified that when defendant came to the police station some time after the shooting, he admitted firing "several shots", "a couple of shots", toward Oliver.
The testimony of the nine-year-old, who unknowingly demonstrated on the witness stand that she did not know her left arm from her right or east from west, was contradictory with respect to which way she was facing when the bullet struck her and when she felt the pain. At one point she testified that she was facing the defendant when she was shot and felt the pain. At another point she testified that she turned toward defendant after she heard the shot from his pistol and felt the pain when she turned. This victim's transcribed testimony, however, was consistent as to where she was in relation to the defendant and to Oliver and that she heard defendant shoot his pistol and felt the pain in her back. Cometrious Hall said she saw defendant with his gun "up" and Oliver with his gun "down". The jury saw and heard this young lady testify and could have accepted her testimony in part and rejected it in other parts.
*431 The state did not present or rule out the presence of ballistics evidence, but did mention that a bullet was removed from Cometrious Hall's back by a medical doctor who later left the LSU hospital to practice medicine in another state. Fortunately the victims did not suffer more disabling injuries.
The jury, likewise, could have accepted Kenneth Oliver's testimony in part, that he did not fire a shot, along with the testimony that defendant fired several shots, and the admissions of defendant that he fired "toward" Cometrious Hall and the Ashley building when he shot at Oliver. This is direct and not circumstantial evidence that only the defendant fired several shots toward the victims.

ASSIGNMENTS OF ERROR
Two policemen testified that the defendant had informed them that he and Oliver had engaged in shootouts before the one in question and that it was a "game" with them. Defendant complained that this testimony went beyond and expanded upon the state's response to discovery under CCrP Art. 716(C). The state's response about what oral statements were made by defendant was that
"[Defendant] stated post-arrest post-Miranda that he had fired several shots ... at Kenneth Oliver."
The substance of the statements made by defendant to the police was given in the state's discovery response. The substance of a statement in the respect required by Art. 716(C) has been defined as the essence, or the essential elements, of the statement. State v. Hooks, 421 So.2d 880 (La.1982). The fact that the batteries arose out of a "game" that defendants had played before is more irrelevant or explanatory of motive than it is essential and substantive. We find that the state responded with the essence of defendant's admission to the police and that defendant's assignment No. 1 is without merit.
In two other assignments, defendant complains that the trial court should have granted either his motion for a mistrial or his later motion for a new trial because of an answer by a police witness that allegedly referred to another crime committed by defendant. The policeman-witness was asked to look at a pistol and answer whether or not it was the weapon that defendant brought to the police station. The policeman answered:
"Yes, sir, that's it. That's the serial number and we ran it and it came up stolen."
The question, "I ask you to look at S-15 [the pistol] and ... recall whether or not that is a weapon he brought in?", did not require any mention of the fact that the pistol was stolen. The answer, which we find was unresponsive, also did not say that defendant stole the pistol or that he was unlawfully in possession of stolen property. Where the answer is unresponsive and does not refer to the defendant's commission of another crime, the trial court does not err in overruling defendant's motions for a mistrial and for a new trial. State v. Hayes, 414 So.2d 717 (La.1982); State v. Hardy, 344 So.2d 1018 (La.1977).
Defendant's next assignment of error relates to the federal due process standard of Jackson v. Virginia, supra, and to defendant's contention that the evidence does not negate beyond a reasonable doubt that defendant acted in self defense. Defendant argues that this is a pure circumstantial evidence case and that LRS 15:438 should be the evidentiary standard applied. See State v. Shapiro, 431 So.2d 372 (La. 1983); State v. Graham, 422 So.2d 123 (La. 1982). Reiterating, we do not agree.
There is direct evidence that a rational jury could believe beyond a reasonable doubt that defendant committed each element of the crime charged.[2]
When we view the totality of the evidence most favorably toward the prosecution under the Jackson v. Virginia standard, *432 accepting in part and rejecting in part the testimony of some of the witnesses as the jury is privileged to do, there is direct evidence that defendant voluntarily fired several shots toward Cometrious Hall and the Ashley apartment, that these were the only shots fired, and that while defendant did not specifically intend to shoot either of the victims, the circumstances are such that indicate that the respective bullet which struck each victim was reasonably certain to produce a violent result upon each victim, and additionally, serious bodily injury or substantial risk of death upon Cometrious Hall. LRS 14:10(2), 11, 34, 34.1. Similarly, this evidence negates beyond a reasonable doubt that defendant was acting in self defense when he fired the shots from his pistol. The use of force or violence upon a person is justifiable when used to prevent a forcible offense by one person against another, but only when the force or violence used is reasonable and is apparently necessary to prevent the forcible offense. LRS 14:19. Under the circumstances of this record, the jury could have concluded beyond a reasonable doubt that defendant acted unreasonably and without apparent necessity to prevent a forcible offense against himself when he fired shots at Kenneth Oliver and in the direction of Ashley and Cometrious Hall. Finding that defendant's assignment seven presents no error, we affirm the convictions.

EXCESSIVE SENTENCE?
In the sentencing hearing, defendant's counsel argued some of the mitigating factors of CCrP Art. 894.1 and the court considered them one by one when imposing the sentence. The court said mitigating factors 1, 2, 5, 6, 9, and 11 did not "help" or "favor" the defendant, that defendant's testimony that he was acting under strong provocation (mitigation No. 3) was not believed, that No. 4 (substantial grounds to believe his actions were justified) was only "borderline in his favor," that defendant's statements that he and Oliver had been playing around with guns for some time negated factor No. 8 (circumstances not likely to recur), and that No. 10 (defendant would be particularly likely to respond to probationary treatment), while perhaps "borderline", was not in his favor because of defendant's past history [of playing with firearms].
The trial court concluded, "should [defendant] be put on probation, there would be an undue risk that he would commit another crime and if he ... play[s] games with guns in ... an area where there is a dense population ... then he is in need of a custodial environment that can be provided most effectively by his commitment to an institution ... [T]he fact that two ... innocent individuals were hit ... causes the matter to be so serious that any lesser sentence... would take away from the seriousness of the offense." During the trial the defendant stated his age (18) to the court and to the jury.
The maximum sentence for aggravated battery is 10 years with or without hard labor. LRS 14:34. The five year sentence under LRS 14:34.1 is to run concurrent with defendant's 6½ year sentence for the aggravated battery. The 6½ year sentence is not so grossly disproportionate to the severity of the crime committed that it shocks our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Tully, 426 So.2d 334 (La.App. 2d Cir.1983). We must agree with the trial court that a 6½ year sentence is not excessive where a defendant has shown such a callous disregard for the life and safety of other persons by engaging in play with loaded guns in a densely populated urban area, and notwithstanding the mitigating factors which were considered, where a more lenient sentence would take away from the seriousness of the offenses, and where, because of the risks mentioned, it is found that the defendant needs institutionalized custodial environment. A trial judge has wide discretion in imposing a sentence within the statutory limits and absent a manifest abuse of discretion such a sentence should not be set aside as excessive. State v. Tully, supra.

CONCLUSION
The conviction and the sentence on each count is AFFIRMED.
SEXTON, J., concurs.
NOTES
[1] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[2] A battery is the intentional use of violence upon the person of another. LRS 14:33. Aggravated Battery is one committed with a dangerous weapon. LRS 14:34. Second degree battery is one committed without the consent of the victim when the offender intentionally inflicts serious body injury or a substantial risk of death upon the victim. LRS 14:34.1.