639 So.2d 469 (1994)
STATE of Louisiana, Appellee,
v.
Vidale G. TASBY, Appellant.
No. 26103-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1994.
Rehearing Denied August 11, 1994.
*470 Indigent Defender Office, John M. Lawrence, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., W. Stanley Lockard, Asst. Dist. Atty., Shreveport, for appellee.
*471 Before SEXTON, VICTORY and BROWN, JJ.
BROWN, Judge.
During a cocaine sale, 18-year-old Vidale G. Tasby shot and killed 23-year-old James Williams, Jr. After rejecting Tasby's claim of self-defense, a jury found him guilty of second degree murder, a violation of LSA-R.S. 14:30.1(A). Tasby appeals his conviction and sentence to life at hard labor without benefit of parole, probation, or suspension of sentence. Finding no error, we affirm.

FACTS
On May 10, 1991, in the Cooper Road area of Shreveport (now Martin Luther King Drive), Vidale Tasby sold Cebren Stokes a $10 piece of cocaine. Apparently Tasby was low on supplies and asked Stokes if he knew where Tasby could buy a half ounce of cocaine. According to Tasby, the Cooper Road area had "a lot of bad stuff and he was looking to "score" elsewhere in the city of Shreveport. Stokes was familiar with the drug community in the Cedar Grove area of town and agreed to provide the necessary introduction. Stokes also would test the cocaine to insure its quality. Tasby enlisted Joshua Williams to furnish a car and drive the group to Cedar Grove. Joshua Williams, age 33, was paid $10 in advance for his services and testified that he knew the purpose of the trip was to obtain cocaine. He described Cedar Grove as a "drug cartel area." Dontae "Shemelle" Harrison, age 18, was the fourth member of the group. In furtherance of the conspiracy, Tasby borrowed a .380 semi-automatic pistol from Tyrone Brayden ("Monkey Roy"). Harrison testified that the four set out to rob someone. The group was armed with a .22 caliber revolver, a .38 caliber revolver and the .380 pistol.
As the four conspirators drove through Cedar Grove, Stokes spotted Carl Ray Gouines on East 73rd Street. Stokes knew Gouines and asked where he could score a half ounce. Gouines took the group to the victim, James Williams, Jr. ("Little James"), who was sitting in a car on East 73rd Street. Gouines, age 28, could appropriately be termed a commission salesman for Little James. Gouines testified, "if he (Williams) made the sale (cocaine), he was going to give me that ($25) or the drug ($25 worth)".
After speaking with Stokes and Tasby, Little James left. In a short time Little James returned. Tasby and Stokes went with Little James into an empty house on East 73rd Street to complete the drug transaction. Joshua Williams and Harrison remained in the car. Gouines stayed outside the door. Shortly after the men entered the house, there was a shot.
Harrison looked toward the house and saw Stokes running to the car. He also saw Tasby standing and Little James kneeling in the doorway of the house. Harrison then saw Tasby shoot Little James. Joshua Williams testified that after the four men drove off, Tasby stated that he had shot the "dude." Will Ford, who was in the vicinity, testified that he saw Tasby shoot Little James. Gouines testified that he heard someone say "drop it," followed by Little James saying "shit" and a gunshot. Gouines said Little James was wearing only shorts and was not armed. Gouines saw that the victim's pockets were turned out and appeared to be empty.
Only Tasby testified to what occurred inside the house. He stated that after Stokes signaled to him that the crack cocaine was diluted, he and Little James argued over its value. According to Tasby, Little James pulled a 9mm semi-automatic pistol; a scuffle ensued and Tasby shot Little James. Tasby stated that Little James dropped his weapon and fell to the floor. Tasby stated on direct examination, that "after he dropped the gun, he just dropped down to the ground, and I shot again ... after he fell, after the gun fell, after he fell, he reached down, and his hand was like going for the gun. He had his hand reached down, and had his hand toward the gun, and I shot again, and I kicked the gun."
Upon returning to the Cooper Road area, the men split the cocaine rocks taken from Little James. When Tasby attempted to return the .380 pistol, he told Brayden that he had used the pistol to shoot a man. Brayden then refused to take back the gun. Tasby later told Brayden that he had buried the *472 pistol. With Brayden's help, investigators recovered the weapon.
Tasby claimed that Stokes picked up the victim's pistol; however, no one else saw the alleged gun that evening. Harrison testified that Stokes ran to the car and put drugs and a black gun in the glove compartment. Brayden testified that two days later, Stokes said he had the .9mm, which he "tossed." In addition to his share of the cocaine, Tasby ended up with a beeper and jewelry taken from the deceased. Until trial, Tasby told no one that the shooting was in self-defense.
The autopsy report confirmed that James Williams died as a result of a gunshot wound. Forensic expert Richard Beighley testified that the slug removed from the body by the coroner was fired from the .380 semi-automatic that was recovered by the detectives. The forensic expert also testified that the absence of gunpowder residue on the t-shirt worn by Williams indicated that the shot was fired from at least a distance of five or six feet. James Williams was wearing shorts and a t-shirt and had been shot twice, once in the arm and chest.
After Cebren Stokes, Carl Gouines and Joshua Williams identified Vidale Tasby as the shooter, two Shreveport detectives arrested him. A search incident to the arrest resulted in the recovery of a .38 caliber revolver, cocaine and a gold watch. The watch was identified as belonging to James Williams.

DISCUSSION

ASSIGNMENT OF ERROR 1
Defendant sought to suppress the evidence seized from his person when he was arrested, claiming lack of probable cause.
Gouines identified Cebren Stokes by name and in a photographic lineup as one of the men at the shooting. Detective Price of the Shreveport Police Department contacted Stokes at his sister's residence where Stokes implicated Joshua Williams. Stokes and Williams named the defendant, Vidale Tasby, as the shooter. A photographic lineup was prepared and Tasby was identified by Stokes, Gouines and Joshua Williams.
While a warrant was being prepared for the arrest of Tasby, an anonymous tipster called and advised Detective Norwood that Tasby had been seen at a particular location. Detectives Norwood and Price proceeded to that area and began to look for Tasby. They saw Tasby on another street and called him over to their van. As Tasby approached the van, he unzipped a pouch he was wearing around his waist. Detective Price identified himself as a police officer and arrested defendant.
A peace officer may, without a warrant, arrest a person when the peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer. LSA-C.Cr.P. Art. 213(3); State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992); State v. Williams, 567 So.2d 755 (La.App. 2d Cir. 1990), writ denied, 573 So.2d 1133 (La.1991).
A homicide had been committed and Tasby identified as the shooter by three witnesses/accomplices. The information provided by the confidential informant concerned only Tasby's location and was not used to establish probable cause. Probable cause to arrest the defendant existed prior to the phone call. The statements by the three witnesses/accomplices were sufficient to establish probable cause and therefore, no warrant was necessary. LSA-C.Cr.P. Art. 213(3). In this case the existence of probable cause was not diminished because the three witnesses were also implicated in the crime. Their statements were consistent and supported by the surrounding circumstances.
Once Tasby was lawfully arrested, the search of the pouch he was wearing was incident to that arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Wilson, 467 So.2d 503 (La. 1985), U.S. cert. denied, 474 U.S. 911, 1027, 106 S.Ct. 281, 585, 88 L.Ed.2d 246, 567 (1985); State v. Banks, 590 So.2d 836 (La. App. 2d Cir.1991).

ASSIGNMENT OF ERROR 2
During voir dire examination, the prosecutor started to read to the venire a portion of *473 the criminal conspiracy statute, LSA-R.S. 14:26. Defense counsel objected, the venire was removed and the trial judge heard argument on the issue. The trial court instructed the State not to read the criminal conspiracy statute but refused to declare a mistrial or admonish the jury.
Defendant contends that the reading of the conspiracy statute by the State constituted a prejudicial remark and basis for mistrial. LSA-C.Cr.P. Art. 770 provides in part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:



(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
The State explained that it intended the reading of the statute to help define principals and clarify the law concerning conspiracies, both of which were relevant to the elements of second degree murder. A number of the participants could have been considered principals in this killing which arose out of a conspiracy to commit a crime. Joshua Williams, who drove the car, testified that he pled guilty to conspiracy to commit armed robbery and was sentenced to 10 years at hard labor. Evidence concerning the gathering of the group to go to Cedar Grove to commit a crime was an essential part of this killing. It was clearly appropriate for the law of conspiracy to be explained in the jury selection process.
Even if the reading of the statute was irrelevant, the trial judge sustained the objection and defendant suffered no prejudice. See State v. Dotch, 298 So.2d 742 (La.1974), U.S. cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 657 (1975), in which the prosecutor's explanation of the law of criminal conspiracy during his opening statement in a murder trial was found by the Louisiana Supreme Court not to constitute prejudicial error.

ASSIGNMENT OF ERROR 3
On direct examination, Gouines was asked by the prosecutor the last time he saw Little James; Gouines responded, "the night he was murdered." Defendant's objection to the characterization of the death as "murder" was overruled.
A conviction shall not be reversed by an appellate court because of an error, defect, irregularity or variance which does not affect substantial rights of the accused. LSA-C.Cr.P. Art. 921; State v. Hicks, 607 So.2d 937 (La.App. 2d Cir.1992). Error, if made by the trial court, is not fatal unless defendant demonstrates prejudice.
Four eyewitnesses testified that Tasby shot James Williams. Tasby admitted to shooting Williams, but alleged that it was in self-defense. No one, except Tasby, saw the victim with a gun. The single statement by Gouines that Williams was murdered did not contribute to Tasby's conviction. The record shows that the error was harmless. State v. Code, 627 So.2d 1373 (La.1993).
Additionally, the answer, which referred only to the case being tried, was not responsive to the question. Where the answer is unresponsive and does not refer to another crime, the trial court does not err in overruling defendant's motion for a mistrial. State v. Hill, 434 So.2d 428 (La.App. 2d Cir.1983), writ denied, 440 So.2d 759 (La. 1983).

ASSIGNMENT OF ERROR 4
In this assignment, defendant complains that hearsay testimony was admitted erroneously under the co-conspirator exception. Brayden stated that he loaned the .380 semi-automatic pistol to "my home boy, Vidale". During direct examination by the State, Brayden was asked why he loaned the weapon to Tasby. Brayden replied, "Because Dontae, I was talking to Dontae earlier that day, and Dontae Harrison said something about using." At this point, the defense raised a hearsay objection. The trial court allowed the witness to state what Harrison *474 said as an exception to the hearsay rule, LCE Art. 801(D)(3)(b). Brayden and Harrison were cousins. Brayden testified as follows: "Yeah. Because he said he (Tasby) might need my gun. Shamelle said he might need (the) gun to go score, to go score with, go pick it up or whatever." LCE Art. 801(D)(3)(b) provides:
A statement is not hearsay if:
The statement is offered against a party, and the statement is: A statement by a declarant while participating in a conspiracy to commit a crime ... and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established.
Harrison had previously testified that the group planned to rob someone. Joshua Williams testified that the four men planned to go to Cedar Grove to buy drugs. There was evidence adduced before Brayden testified establishing a prima facie case of conspiracy. A trial court's determination as to the admissibility of such evidence, i.e. whether the state has made a prima facie showing of conspiracy ... will not be overturned on appeal absent clear error. State v. Lobato, 603 So.2d 739 (La.1992).
The statement made by Harrison to Brayden explained why Brayden loaned the gun to Tasby. At the time, Tasby had arranged for transportation and an individual with knowledge of the Cedar Grove area to further his criminal objective. Just as Tasby needed a car, he also needed a gun for the planned venture. The statement made by Harrison to Brayden was an explanation in furtherance of the conspiracy by a participant. The trial court correctly allowed this statement.

ASSIGNMENT OF ERROR 5
Although a written transcript of a contradictory statement was used by defendant to impeach Harrison's testimony, the trial court did not allow the tape recording of that statement to be played to the jury. The defense complains that the transcript did not permit the jury to evaluate Harrison's demeanor at the time the statement was made. The basis of the trial court's ruling was that past tapes had been of poor quality and juries were not able to understand them. The trial court instructed defense to use the transcript.
Harrison never denied making this contradictory statement, nor was there an assertion that the transcribed statement was inaccurate. The witness on every occasion admitted the content of the transcribed statement.
On cross examination, it was proper to ask the witness whether a particular prior inconsistent statement was made. If the witness admits making the statement, the matter is over; however, if the witness denies making the statement, it would be error not to allow the tape recording into evidence during defendant's presentation of his case.
Harrison admitted making the inconsistent statement and thus, there was no actual need to play the tape. LSA-C.E. Art. 613.

ASSIGNMENT OF ERROR 6
Defendant contends that the trial court erred in denying his motion for a new trial. In this motion, defendant asserted that use of leg shackles was improper and prejudicial; that the trial court's refusal to instruct the jury on accomplice testimony was erroneous; and that the evidence was insufficient to convict. The sufficiency of evidence argument is also raised in Tasby's post-verdict motion for judgment of acquittal and will be addressed in assignment seven.
Defense counsel alleged that "if" jurors saw the leg shackles worn by appellant during trial, it would destroy the presumption of innocence. The restraint, which was a thin chain between Tasby's ankles, was ordered by the trial judge because of Tasby's disruptive behavior in jail and his physical confrontations with sheriff's deputies and prosecutors. Every effort was made to insure that the chain would not be seen. Tasby was brought to the courtroom outside the presence of the jury. He was led into the courtroom and seated before the jury arrived and did not leave the courtroom until the jury had left. The record does not indicate that any juror actually saw the chain. It does not appear that the trial court abused its discretion. State v. Otis, 586 So.2d 595 *475 (La.App. 2d Cir.1991), writ granted on other grounds, 589 So.2d 487 (La.1991); State v. Calhoun, 554 So.2d 127 (La.App. 2d Cir. 1989), writ denied, 558 So.2d 601 (La.1990).
Tasby's motion for new trial also asserted that the trial court erred by not giving a requested special jury instruction on the testimony of accomplices. State v. Heath, 513 So.2d 493 (La.App. 2d Cir.1987), writ denied, 519 So.2d 141 (La.1988), dealt with this issue. The charge in Heath included instructions on how the jury was to treat the testimony of witnesses. The court found that where the special instructions are included in the general instructions, the special instructions need not be given separately.
The general instructions in the case at bar are substantially the same as those in Heath, supra at 499. The charge given the jury on the credibility of witnesses was adequate to convey to the jury the necessity of treating the accomplices' testimony with caution. State v. Washington, 407 So.2d 1138 (La.1981). The trial court was not in error in refusing to give the requested instruction.

ASSIGNMENT OF ERROR 7
Defendant's final assignment of error asserts that the trial court erred in denying his motion for post-verdict judgment of acquittal. Pursuant to LSA-C.Cr.P. Art. 821, defendant moved for a post-conviction judgment of acquittal on the grounds that the verdict was contrary to the law and evidence because: 1) the state failed to prove the elements of second degree murder beyond a reasonable doubt; and 2) the state proved at best no greater crime than manslaughter.
LSA-C.Cr.P. Art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), 605 So.2d 1089 (La.1992).
This court's review of questions of fact in a criminal case is limited to a sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986).
In support of his first assertion, Tasby claims that there was insufficient evidence presented by the prosecution to prove that robbery was his real motive. This claim fails to take into account Dontae Harrison's testimony that Tasby, armed with a .380 semi-automatic pistol, went to the Cedar Grove area to "rob somebody."
Second degree murder is a killing of a human being when the offender has a specific intent to kill or inflict great bodily harm, or, if there is no such intent, when the killing occurs during the perpetration or attempted perpetration of certain enumerated felonies which include all robberies. LSA-R.S. 14:30.1.
Defendant and Stokes were the only available witnesses who were inside the house. Stokes did not testify. Tasby testified that he killed the victim only after the victim pulled a pistol. Defendant claims the prosecution failed to disprove self-defense or *476 prove beyond a reasonable doubt an offense greater than manslaughter.
Both Carl Ray Gouines and Will Ford testified that the victim had no weapon. Will Ford testified that he saw Tasby reach for a gun, move toward Williams and shoot him. Dontae Harrison testified that he saw Tasby shoot James Williams, who was in the doorway on his knees. Gouines testified that the victim was wearing only shorts and that Tasby had the only gun. Gouines stated that after he heard the first shot, he saw Tasby with a gun and Cebren Stokes rifling through the victim's pockets.
Only Tasby testified that Stokes picked up a Glock .9 mm pistol at the scene of the crime. Brayden said that two days later Stokes told him that he had a .9mm, which he "tossed." Brayden did not see the gun nor was he told where the gun came from. In a statement to the police, Harrison said Stokes had a Glock .9mm after the shooting. Harrison testified to making the prior inconsistent statement but claimed he lied because of threats that he would be charged with murder. No one else testified to seeing Stokes in possession of the gun and Stokes did not testify.
Richard Beighley testified that the bullet retrieved from the body was fired from the.380 that Brayden loaned to Tasby. Beighley also testified to the absence of powder burns on the victim's clothes, thereby refuting Tasby's testimony of a struggle. Dr. George McCormick testified that Williams died from a gunshot wound to the chest. See State v. Ducre, 596 So.2d 1372 (La.App. 1st Cir.1992), 600 So.2d 637 (La.1992).
A rational trier of fact could find that Tasby had a specific intent to kill or inflict great bodily harm and/or that the killing occurred during an armed robbery. In fact, a robbery did take place after the shooting. We find that this assignment of error lacks merit.

CONCLUSION
For the reasons set forth above, defendant's conviction is affirmed.
VICTORY, J., concurs.
SEXTON, J., concurs with written reasons.
SEXTON, Judge, concurs.
Differing somewhat with the treatment of Assignment of Error Nos. 2 and 5, I respectfully concur.

APPLICATION FOR REHEARING
Before SEXTON, HIGHTOWER, VICTORY, BROWN and WILLIAMS, JJ.
Rehearing denied.