# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1222

STATE OF LOUISIANA

VERSUS

CHARLES EDWARD GRACE

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 78232-F
HONORABLE J. LARRY VIDRINE, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Marc T. Amy, Judges.

**CONVICTIONS AFFIRMED. AGGRAVATED BURGLARY AND CONSPIRACY TO COMMIT AGGRAVATED BURGLARY SENTENCES AFFIRMED. ARMED ROBBERY AND CONSPIRACY TO COMMIT ARMED ROBBERY SENTENCES VACATED. REMANDED FOR RESENTENCING ON THE ARMED ROBBERY AND CONSPIRACY TO COMMIT ARMED ROBBERY CONVICTIONS, WITH INSTRUCTIONS.**

Trent Brignac
District Attorney
Marcus L. Fontenot
Assistant District Attorney
Post Office Box 780
Ville Platte, LA   70586
(337) 363-3438
COUNSEL FOR APPELLEE:
    State of Louisiana

Paula C. Marx
Louisiana Appellate Project
Post Office Box 80006
Lafayette, LA   70598-0006
(337) 991-9757
COUNSEL FOR DEFENDANT/APPELLANT:
    Charles Edward Grace

AMY, Judge.

The defendant was convicted of two counts of armed robbery, one count of aggravated burglary, two counts of conspiracy to commit armed robbery and one count of conspiracy to commit aggravated burglary. The trial court sentenced the defendant to forty years at hard labor on the two armed robbery counts; twenty years at hard labor for the two conspiracy to commit armed robbery counts; fifteen years at hard labor for the aggravated burglary count; and fifteen years at hard labor for the conspiracy to commit aggravated burglary count. All sentences were ordered to be served concurrently. The defendant now appeals his sentences and convictions. For the following reasons, we affirm the defendant's convictions on all counts and his sentences for aggravated burglary and conspiracy to commit aggravated burglary. We vacate the armed robbery and conspiracy to commit armed robbery sentences as indeterminate and remand for resentencing on the armed robbery and conspiracy to commit armed robbery convictions, with instructions.

## Factual and Procedural Background

A jury found the defendant, Charles Edward Grace, guilty of two counts of armed robbery, two counts of conspiracy to commit armed robbery, aggravated burglary and conspiracy to commit aggravated burglary for his alleged involvement in a home invasion that occurred in Ville Platte, Louisiana on March 3, 2009.

The State alleged that the defendant planned for Antonio "Tony" Thomas and Gavin Herbert to rob Renee Nelson's house. Gavin testified that the defendant planned the robbery and took them to pick up a sawed-off shotgun. Gavin further testified that the defendant drove them to Renee's house and waited nearby while Gavin and Tony executed the home invasion.

At some point during the robbery, Tony left with one of the victims, Kaninski Larnette, to get more money. Tony was eventually shot and killed during a struggle at Kaninski's mother-in-law's house. After the police arrived at Renee's house, Gavin fled. He was apprehended the next day. The defendant was charged after Gavin informed the authorities about his involvement.

The jury convicted the defendant on all counts of the indictment. The trial court ordered a pre-sentence investigation and subsequently sentenced the defendant to forty years at hard labor on the two armed robbery counts; twenty years for the two conspiracy to commit armed robbery counts; fifteen years at hard labor for the aggravated burglary count; and fifteen years at hard labor for the conspiracy to commit aggravated burglary count. All sentences were ordered to be served concurrently.

The defendant appeals, asserting the following assignments of error:

1. The proof and conviction of both conspiracy to commit aggravated burglary and two counts of conspiracy to commit armed robbery, as well as the completed offenses of aggravated burglary, and two counts of armed robbery violate double jeopardy when those convictions are based on the same evidence.

2. The trial court erred in admitting the out-of-court hearsay statements of Tony Thomas implicating Charles Grace. The statements were not made in furtherance of the objective of the conspiracy, and in the absence of a prima facie case of conspiracy, the statements do not meet the exception to the hearsay rule.

3. The evidence in this case is legally insufficient to convict Charles Grace of any of the charges in the indictment. The sole evidence is the absurd and conflicting claims of the conspirators and perpetrators of the two home invasions which are the basis of these charges. These ruthless criminals tied up and robbed children, invaded two separate homes armed with dangerous weapons, and for some reason deserve the credibility that carried Charles Grace to a defacto Life Sentence.

2

4. Charles Edward Grace was convicted by a Non-Unanimous Verdict in Violation of the United States and Louisiana Constitutions.

**Discussion**

*Sufficiency of the Evidence*

In his third assignment of error, the defendant argues that the evidence in this case is legally insufficient to convict him. When presented with multiple issues on appeal, including a claim of insufficiency of the evidence, an appellate court should first resolve the insufficiency of the evidence claim. *State v. Lawrence*, 40,278 (La.App. 2 Cir. 3/15/06), 925 So.2d 727. When reviewing a sufficiency of evidence claim, "the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Freeman*, 01-997, p. 3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).

The reviewing court should give "great deference to a jury's determination to accept or reject the testimony of a witness in whole or in part" and should not "substitute its own appreciation of the evidence for that of the fact finder." *Lawrence*, 925 So.2d at 736-37. The testimony of one witness, if the trier of fact accepts his or her testimony, is sufficient to support a conviction in the absence of internal contradiction or irreconcilable conflicts with physical evidence. *State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied*, 09-1955 (La. 6/25/10), 38 So.3d 352.

In *State v. Allen*, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, *writ denied*, 02-2997 (La. 6/27/03), 847 So.2d 1255, *cert. denied*, 540 U.S. 1185, 124 S.Ct. 1404 (2004), the defendant recruited an accomplice to carry out a robbery, helped the

3

accomplice in preparing for the robbery and waited across the street from the location where the robbery was carried out. His conviction was based primarily on the testimony of the accomplice who actually carried out the robbery. The accomplice's testimony was corroborated, in part, by witness testimony that the defendant sought out the accomplice before the robbery. On appeal, the second circuit found that the evidence was sufficient and affirmed the defendant's conviction for armed robbery.

Here, the defendant was convicted of armed robbery, conspiracy to commit armed robbery, aggravated burglary, and conspiracy to commit aggravated burglary.

Armed robbery is defined in La.R.S. 14:64(A) as follows:

> Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

Aggravated burglary is defined in La.R.S. 14:60 as follows:

> Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
>
> > (1) Is armed with a dangerous weapon; or
> >
> > (2) After entering arms himself with a dangerous weapon; or
> >
> > (3) Commits a battery upon any person while in such place, or in entering or leaving such place.

Criminal conspiracy is defined in La.R.S. 14:26(A) as follows:

> Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

4

If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.

Further, physical presence at the scene of a crime is not a requirement to be convicted as a principal to the crime. Louisiana Revised Statutes 14:24 states that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

Renee's daughter, M.N. and her cousin, K.J.,[1] both testified that, at approximately 10:00 p.m., Renee's fiancé, Jowaski Frank, dropped them off at Renee's house. M.N. and K.J. testified that, when they entered the house, they were confronted by Tony and Gavin, who were armed and masked. Both of the girls testified that they knew Gavin, but did not recognize his voice because he did not speak much during the robbery. M.N. testified that she recognized the silver handgun wielded by one man as the one from her mother's bedroom. The men tied up the girls on M.N.'s bed and demanded money and drugs. They eventually took approximately fifty-five cents from M.N.'s pocket and eighty dollars from K.J.'s purse.

Testimony revealed that Renee, Jowaski, his mother, Lisa Frank, and their friend Wilinsky Thomas returned to the house at approximately 10:30 p.m., and that Wilinsky's stepbrother, Kaninski, dropped by about that time. The adults socialized in the garage for a while. Tony and Gavin eventually forced the adults into the house and repeatedly demanded money from them. Several adults testified that Tony and

---

[1] Initials are used in place of the names of minor children pursuant to La.R.S. 46:1844(W).

Additionally, Renee's daughter is variously referred to as "A.N." and "M.N." in the record. We adopt the initials used in the indictment, "M.N."

Gavin told them they were "from Baton Rouge" and that "Robert Drummer" sent them to rob them. Jowaski testified that he heard one masked man say that "Charles" had "sent him for the money and he know it's there, he knows the money is here[.]" Jowaski testified that they took a dollar from him and Kaninski testified that they took approximately seven hundred dollars from him.

Eventually, Kaninski told the men he could take them to get more money and that he told Tony that he would "give him some money to leave [them] alone." Kaninski testified that Tony, brandishing the silver handgun, forced him to drive to his mother-in-law's house. According to Kaninski's testimony, while they were in the car, Tony told him that the defendant sent the men to Renee's house and he "paid them $5,000 to kill everybody in the house." Kaninski also testified that Tony made a phone call and asked about the money that was supposed to be in Renee's house. Kaninski testified that the person on the phone told them to meet him on a road behind Tobacco Tavern, but that they did not meet the person although they drove to that location. Kaninski thought that the person on the phone was the defendant, but offered no other explanation for that assumption other than "who else he gonna call."

According to Kaninski, while Tony was attempting to commit a second home invasion at his mother-in-law's house, he was shot and killed during a struggle. Kaninski then alerted the police to the hostage situation at Renee's house. When the police arrived at Renee's to investigate, Gavin ran out of the back door. Although one of the responding officers attempted to apprehend him, he managed to escape. He hid under a trailer until he was captured the next day. In her incident report, the officer stated that she observed a second suspect run out of the back door. However, at trial, the officer stated that she had confused one of the victims for a suspect

6

because he was wearing dark clothing. Additionally, Wilinsky testified about a "third robber" who stayed in the kitchen. No other witness testified that there were more than two robbers.

Gavin testified for the State at trial, and stated that he was not promised anything for his testimony and that he had not made any "deals" with the State or the district attorney's office. Gavin testified that he and Tony met with Tony's uncle, the defendant, on the afternoon of March 3, 2009. According to Gavin's testimony, the defendant had a "mission" for them, which was to get money from Kaninski. Gavin testified that the defendant told them the layout of the house they were supposed to rob, that there was supposed to be at least fifty thousand dollars, and where a silver handgun was located. Gavin testified that he, Tony, and the defendant were supposed to split the money. Gavin also testified that the defendant told Tony to kill someone if he had to because they would "testify on [him]" if they were caught.

According to Gavin's testimony, the defendant drove to an abandoned house on the other side of town, where Tony retrieved a sawed-off shotgun from under a couch. Tony then picked up some dark clothing from his stepmother's house and the defendant dropped both Tony and Gavin off at Gavin's house to change. Gavin further testified that the defendant picked up both men and dropped them off outside Renee Nelson's house at about 9:30 p.m. According to Gavin, he and Tony were to break into the house while the defendant waited across the street. Gavin testified that Tony called the defendant to make sure the "coast was clear" before they broke down the back door. Additionally, Gavin testified that the defendant would pick them up when they called to say they had the money. Generally, Gavin's testimony corroborated the other witnesses' testimony regarding the robbery of Renee's house.

7

Gavin explained Tony's statements that they were "from Baton Rouge" and that "Robert Drummer" sent them as intended to "throw them off and stuff. . . ."

Jowaski, Wilinsky and Kaninski all testified that they recognized Tony's voice. In particular, Kaninski testified that he had some altercations with the defendant and with Tony in the past. Renee testified that she and the defendant had dated at some point, and that the defendant used to have a key to her house but that he had given it back. Additionally, Renee identified as hers the silver handgun that the police seized from Kaninski's mother-in-law's house.

The defendant's girlfriend, Shalana Doucet, testified that the defendant was coming down with the flu that day. She testified that Tony, Gavin and "another little guy" came by the house about 4:00 or 5:00 p.m. and that the defendant gave them a ride somewhere. Shalana testified that, after that, the defendant was in or around the house with her until 8:00 p.m. when she went to take a nap. She further testified that, when she woke up at about 10:00 p.m., the defendant was sleeping on the couch at her mother's house. According to Shalana's testimony, Tony called between 10:00 and 10:30 p.m. and asked for a ride, but the defendant refused. Shalana agreed with the State's characterization that Tony was "angry" during that phone call. Shalana testified that, on her way to work between 10:30 and 11:00 p.m., she talked to the defendant on her cell phone.

Several other witnesses testified that they saw Gavin, Tony and another unidentified man with the defendant at about 4:00 or 5:00 p.m. and that the defendant gave them all a ride somewhere. Fernella Tezeno, Tony's stepmother, testified that the defendant dropped Tony off at her house about 5:00 or 5:30 p.m. She testified that there was no one else in the defendant's car and that he left alone. Additionally,

8

she testified that Tony left her house soon thereafter and that she did not see who he met.

Viewing the evidence in the light most favorable to the prosecution, the testimony and evidence is sufficient that the jury could have reasonably concluded that Tony and Gavin committed an armed robbery when they took money from M.N., and Kaninski[2] while armed with the sawed-off shotgun and the silver handgun. M.N., and Kaninski testified that they did not want to give Tony and Gavin their money.

Further, the testimony and evidence is sufficient to establish that Tony and Gavin committed an aggravated burglary when they entered Renee's house without authorization (by breaking down the back door) and that, although they arrived after the break-in, M.N., K.J., Renee, Jowaski, Lisa, Wilinsky and Kaninski were all present in the house. Further, as discussed above, the evidence is sufficient to establish that Tony and Gavin intended to commit a felony therein—armed robbery. When Tony and Gavin broke into the house, they were already armed with a dangerous weapon, i.e., the sawed-off shotgun, and they further armed themselves by stealing the silver handgun from Renee's bedroom drawer.

Although the defendant was not physically present in Renee's house when these offenses occurred, his presence was not required for the jury to convict him as a principal to the offenses of armed robbery and aggravated burglary. The testimony supports the jury's conclusion that the defendant was involved in the commission of those offenses. Gavin testified that the defendant not only conspired to commit the crime, but that he drove Tony and Gavin to Renee's house, acted as a lookout and was, at least initially, intended to be the "getaway driver" once the robbery was

---

[2] The defendant was only charged with the armed robbery of Kaninski and M.N. and conspiracy to commit armed robbery of Kaninski and M.N.

9

completed. Gavin's credibility was bolstered by the general corroboration by other witnesses of the events that happened at Renee's house. We note that, although the defendant offered alibi testimony, the jury was free to accept or reject that testimony. Further, the alibi testimony did not necessarily establish that the defendant was either at Shalana's mother's or grandmother's house at the time of the robbery.

As for the conspiracy charges, Gavin's testimony was sufficient to establish that he, the defendant, and Tony agreed to commit an armed robbery with the purpose of "getting some money from Kaninski" and that they made an act in furtherance of the conspiracy when they drove to the abandoned house to retrieve the sawed-off shotgun eventually used in the crime. That testimony was corroborated, in part, by defense witnesses who testified that the defendant drove Tony, Gavin, and "another little guy" at the approximate time that Gavin claimed they planned the robbery.

As the finder of fact, the jury was free to accept, in whole or in part, the testimony the victims and Gavin and to reject, in whole or in part, the defense witnesses' testimony that the defendant only gave a ride to Tony, Gavin and "another little guy." The jury could observe the demeanor of all the witnesses, and was in the best position to weigh their testimony and evaluate their credibility. We find that any rational trier of fact could have found that the State sustained its burden of proving all of the elements of the charged offenses beyond a reasonable doubt.

The defendant additionally argues that the trial court's failure to instruct the jury regarding the "untrustworthiness of accomplice testimony" warrants reversal of his convictions. In support of this argument, the defendant cites *State v. May*, 339 So.2d 764 (La.1976). In *May*, the supreme court held that "[a]s a general principle of Louisiana law, a conviction can be sustained on the uncorroborated testimony of

10

a purported accomplice, although the jury should be instructed to treat such testimony with great caution." The defendant did not request such a jury instruction nor object about the lack thereof at trial. *See State v. Rabun*, 38,655 (La.App. 2 Cir. 8/18/04), 880 So.2d 184. Therefore, we do not consider this argument because no request for the instruction was made at trial.

This assignment of error lacks merit.

*Admissibility of Accomplice Testimony*

In his second assignment of error, the defendant asserts that the trial court erred in admitting the out-of-court hearsay statements of Tony Thomas. The defendant argues that Tony's statements to Jowaski that "Charles" sent Gavin and Tony to rob them and to Kaninski that the defendant sent them to rob them were not made in furtherance of the conspiracy but "simply described or related events that supposedly occurred previously in furtherance of the conspiracy." The defendant also argues that the statements' admittance violates his constitutional right to confront his accusers.

Louisiana Code of Evidence Article 801(D)(3)(b) defines as non-hearsay "[a] statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established[.]" The trial court's determination of the admissibility of a co-conspirator's statements will not be overturned absent clear error. *State v. Cox*, 04-42 (La.App. 3 Cir. 6/16/04), 876 So.2d 932.

The state establishes a prima facie evidence of a conspiracy when it introduces evidence that, if unrebutted, would be sufficient to establish the facts of the conspiracy. *State v. Howard*, 04-499 (La.App. 3 Cir. 11/17/04), 888 So.2d 375, *writ denied*, 04-3216 (La. 4/8/05), 899 So.2d 13. The standard for determining the

admissibility of co-conspirator statements is less than that required to convict the defendant of conspiracy. *Id.*, citing *State v. Matthews*, 26,550 (La.App. 2 Cir. 12/21/94), 649 So.2d 1022, 1029, *writ denied*, 95-435 (La. 6/16/95), 665 So.2d 341. In addition to establishing a prima facie case of conspiracy, the state has to establish that the statement was made while the conspiracy was ongoing, and that the statement was made in furtherance of the conspiracy. *Cox*, 876 So.2d 932.

In *State v. Lobato*, 603 So.2d 739 (La.1992), the supreme court held that it was not necessary for an accomplice's statements to actually further the objective of the conspiracy; instead, they only needed to "promote" the conspiratorial objective. Similarly, in *State v. Tasby*, 639 So.2d 469 (La.App. 2 Cir. 1994), *writ denied*, 648 So.2d 1336 (La.1995), the second circuit held that one co-conspirator's statement to another co-conspirator was admissible because it explained the purpose of lending a gun to the defendant and was therefore in furtherance of the conspiracy. *Compare State v. Leonard*, 05-42 (La.App. 5 Cir. 7/26/05), 910 So.2d 977, *writ denied*, 06-2241 (La. 6/1/07), 957 So.2d 165 (finding that the victim/co-conspirator's statements to a girlfriend that he was driving to Memphis to buy drugs was not in furtherance of the conspiracy but was only intended to inform his girlfriend of his whereabouts).

The defendant relies, in part, on the second circuit's holding in *State v. Jackson*, 31,433 (La.App. 2 Cir. 1/20/99), 726 So.2d 1061, *writ denied*, 99-2250 (La. 12/17/99), 751 So.2d 876, which noted that statements made by a co-conspirator to the police were not admissible as accomplice testimony because the co-conspirator had withdrawn from the conspiracy at that point and, therefore, the statements could not be viewed as furthering the objective of the conspiracy.

12

In this case, through Gavin's testimony about the defendant's involvement, the State established a prima facie case of conspiracy. The defendant argues that the statements were not made while the conspiracy was ongoing. We find the defendant's argument unpersuasive. Although the original objective of the conspiracy was to rob Renee's house (or Kaninski), when the conspirators did not find the promised amount of money at Renee's house, the objective of the conspiracy changed to involve robbing another location.

Further, although the defendant argues that statements by a co-conspirator about his involvement in planning the robbery cannot be in furtherance of the conspiracy, the State argued that "the testimony is going to show that Jowaski Frank is going to say Charles sent us over here, he paid us $5,000 to come over here, he said you had some money. Legitimizing to the victim we know you have money because Charles Grace sent us here, we think is in furtherance of the act being sought." At trial, Jowaski testified to that effect.[3] The trial court did not articulate its reasons for admitting Tony's statements. Given the deference due the trial court's determination, we do not find that the trial court was clearly wrong in finding the statements admissible as non-hearsay under La.Code Evid. art. 801(D)(3)(b).

The defendant also argues that the admission of Tony's statements about his involvement in the conspiracy violated his right to confront his accusers under the Sixth Amendment to the United States Constitution and La.R.S. 15:273. Although the defendant objected to the admission of Tony's statements on evidentiary grounds, the record does not reveal that the defendant raised the constitutional issue at trial. The defendant's argument does not comply with the contemporaneous objection rule.

---

[3] Jowaski testified that Tony stated that "Charles" had "sent for the money and he know it's there, he knows the money is here . . . if [they didn't] give the money everybody gonna die."

13

La.Code. Crim.P. art. 841; *see State v. Marcantel*, 98-825 (La.App. 3 Cir. 12/22/99), 756 So.2d 366, *writ denied*, 00-208 (La. 8/31/00), 766 So.2d 1274. Therefore, we do not consider this argument.

This assignment of error is without merit.

*Double Jeopardy*

The defendant asserts that his convictions for armed robbery and aggravated burglary as well as his convictions for conspiracy to commit armed robbery and conspiracy to commit aggravated burglary are violative of the constitutional protections against double jeopardy.

The constitutional protections against double jeopardy prevent a second prosecution for the same offense after an acquittal or conviction, and prevent multiple punishments for the same offense. *State v. Smith*, 95-061 (La. 7/2/96); 676 So.2d 1068. Our courts apply two separate tests—the *Blockburger* test and the "same evidence" test—in order to determine whether offenses are the same for double jeopardy purposes. The *Blockburger* test, derived from *Blockburger v. United States*, 284 U.S.1299, 52 S.Ct. 180 (1932), requires the court to determine whether each crime requires proof of an additional fact that the other does not. *Id.* The "same evidence" test is as follows:

> If the evidence required to support a finding of guilty of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a conviction, not all of the evidence introduced at trial.

*Smith*, 676 So.2d at 1069-70. The remedy for a double jeopardy violation for multiple punishments for the same offense is to vacate the conviction and sentence

14

for the less severely punishable offense and affirm the conviction and sentence for the more severely punishable offense. *Rabun*, 880 So.2d 18.

The supreme court addressed whether a conviction as a principal to an offense and for conspiracy necessarily violated the protections against double jeopardy in *State v. Knowles*, 392 So.2d 651 (La.1981). The court said:

> [I]n order to be convicted as a principal, there must be proof that the crime was committed; a conviction for conspiracy does not depend upon the actual commission of the crime, but only upon an act in furtherance of the conspiracy.
>
> . . . .
>
> Similarly, the proof required to convict an accused as a principal to a crime does not necessarily involve the same evidence that is needed for a conviction of conspiracy. The term "principal" is broadly defined to include the actual perpetrator of the crime as well as one who assists in the perpetration. The crime of conspiracy is reached between two or more persons and an act done in furtherance of the agreement. It is at least conceivable that an accused may be proven to have assisted in a crime without introducing any evidence as to agreement. In this sense, the two crimes do not involve the same evidence; they are not the "same evidence."

*Id.* at 654-55. (Citations omitted.)

In *Rabun*, 880 So.2d 184, the defendant was convicted of armed robbery and conspiracy to commit armed robbery. The conviction was based, in part, on a co-conspirator's testimony that the defendant planned the robbery, helped surveil the convenience store for cameras, dropped off the co-conspirator to perform the robbery and picked him up after the crime was completed. The second circuit held that the defendant's convictions for armed robbery and for conspiracy violated double jeopardy protections because the "same evidence" was used to prosecute both crimes.

Conversely, in *State v. Alexander*, 43,796 (La.App. 2 Cir. 1/14/09), 2 So.3d 1168, *writ denied*, 09-368 (La. 11/6/09), 21 So.3d 299, the police conducted a

15

"buy/bust" operation using an informant. The informant contacted one of the defendant's co-conspirators, who called the defendant and arranged for him to meet her to sell cocaine. The informant gave his money to the accomplice, who met with the defendant, purchased the cocaine and delivered it to the informant. The informant gave the co-conspirator more money, and she again met with the defendant to obtain cocaine and deliver it to the informant. The defendant was subsequently convicted of distribution of cocaine, conspiracy to distribute cocaine, and possession of cocaine.

On appeal, the second circuit held that the convictions did not violate the protections against double jeopardy. The second circuit reasoned that the conspiracy had already been completed when the defendant agreed with the accomplice to sell cocaine and committed an act in furtherance by traveling to meet the accomplice, and that the principal crime was completed when the defendant transferred the cocaine to his accomplice, who then delivered it to the informant. Thus, in the their estimation, the "same evidence" was not required to support a conviction for both conspiracy to distribute cocaine, distribution of cocaine, and possession of cocaine. *See also State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied*, 09-1955 (La. 6/25/10), 38 So.2d 352 (evidence sufficient to support convictions of armed robbery and conspiracy to commit armed robbery); *State v. Farmer*, 497 So.2d 777 (La.App. 3 Cir. 1986), *writ granted in part on other grounds*, 503 So.2d 469 (La. 1987) (conspiracy to possess 40,000 pounds of marijuana and conspiracy to possess 10,000 pounds of marijuana, although temporally overlapping, were separate crimes).

Here, under the *Blockburger* test, the crimes of conspiracy to commit armed robbery, armed robbery, conspiracy to commit aggravated burglary and aggravated burglary require proof of at least one other fact that the others do not.

16

The defendant urges the court to rely on *Rabun*, 880 So.2d 184, in support for his proposition that he cannot be convicted for as a principal and for the underlying conspiracy. He argues that the overt act necessary for the conspiracy charge is also the "aiding or abetting" necessary to the principal charge and thus, his convictions do not comport with the "same evidence" test.

With regard to the "same evidence" test, we do not find the defendant's reliance on *Rabun* persuasive. Here, there were two separate and distinct periods of activity upon which the offenses were based. Thus, following the reasoning of *Knowles*, 392 So.2d 651, and *Alexander*, 2 So.3d 1168, the "same evidence" was not required to convict the defendant on the conspiracy charges and the principal crimes.

The conspiracy was completed when the defendant agreed with Tony and Gavin to rob and burgle Renee's house and when the trio committed an act in furtherance thereof by retrieving the sawed-off shotgun from the couch at an abandoned house. The principal crime was complete when Tony and Gavin went on to commit an armed robbery and aggravated burglary of Renee's house and its occupants, with the defendant acting as the lookout and getaway driver. Therefore, the defendant's convictions do not violate the protections against double jeopardy.

This assignment of error is without merit.

*Unanimity of Jury*

The defendant argues that he was convicted by an unconstitutional non-unanimous jury. Ten jurors found the defendant guilty of all counts of the indictment. The other two jurors found him not guilty on all counts of the indictment.

Louisiana Constitution Article I, § 17(A) provides that a case "in which the punishment is necessarily confinement at hard labor shall be tried before a jury of

17

twelve persons, ten of whom must concur to render a verdict." *See also* La.Code Crim.P. art. 782(A).

This court has previously rejected arguments that a non-unanimous guilty verdict violates the state and federal constitutions. *See State v. Sumrall*, 09-1216, (La.App. 3 Cir. 4/7/10), 34 So.3d 977, *writ denied*, 10-1020 (La. 12/10/10), 51 So.3d 722; *State v. Juniors*, 05-549 (La.App. 3 Cir. 12/30/05), 918 So.2d 1137, *writ denied*, 06-267 (La. 9/15/06), *cert. denied*, 549 U.S. 1226, 127 S.Ct. 1293 (2007). The defendant posits that this principle should be revisited, "particularly since a 10-2 verdict was reached on the testimony of a co-conspirator, with no physical evidence." We find no reason to deviate from the well-settled principle that a non-unanimous jury is not required to render a guilty verdict.

Accordingly, this assignment of error is without merit.

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find three errors patent.

The transcript of the sentencing hearing reflects that the trial court imposed the following sentences:

> On the two counts of Armed Robbery in violation of Louisiana Revised Statute Title 14, Section 64, I'm going to sentence you to 40 years at hard labor with the Department of Corrections. On the Conspiracy to Commit Aggravated Burglary, I'm going to sentence you to 15 years with the Department of Corrections at hard labor. On the two counts of Conspiracy to Commit Armed Robbery, I'm going to sentence you to 20 years. They shall all run concurrently.
>
> . . . .
>
> Okay, I did not sentence you on the Aggravated Burglary, I'm going to sentence him to 15 years at hard labor with the Department of Corrections. Everything will run concurrently.

However, the court minutes of the sentencing hearing state, in pertinent part, that "[t]he Court sentenced the defendant for the charges of Armed Robbery (2 counts) to serve 40 years at hard labor with the Department of Corrections *on each count* to run concurrently, serve 20 years at hard labor *on each count* to run concurrently for the charges of Conspiracy to Commit Armed Robbery (2 counts). . . . ." (Emphasis added.)

In instances where the minutes and the transcript differ, the transcript must prevail. *State v. Kimbrough*, 09-1564 (La.App. 3 Cir. 6/2/10), 38 So.3d 1258. Louisiana Code of Criminal Procedure Article 879 states, "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence." Where the trial court has imposed one sentence for multiple counts, this court has previously set aside the defendant's sentence on those counts as indeterminate and remanded the case to the trial court for resentencing on each count. *State v. Monceaux*, 04-449 (La.App. 3 Cir. 10/20/04), 885 So.2d 670. We conclude that the defendant's sentences as to the two counts of armed robbery and the two counts of conspiracy to commit armed robbery are indeterminate, and we vacate those sentences and remand to the trial court for resentencing on each of those counts.

Additionally, the trial court incorrectly advised the defendant as to the time limitation for filing an application for post-conviction relief. At sentencing, the trial court stated, "I further advise you that by virtue of Louisiana Code of Criminal Procedure Article 930.8 there is a two year prescriptive period for you to apply for post conviction relief." Louisiana Code of Criminal Procedure Article 930.8 provides that the defendant has "two years after the judgment of conviction and sentence has become final" to apply for post-conviction relief.

Thus, we instruct the trial court to inform the defendant of the correct provisions of article 930.8 within ten days of the rendition of this opinion and to file written proof in the record that the defendant received the notice. *See State v. Miller*, 10-237 (La.App. 3 Cir. 11/3/10), 49 So.3d 1028.

Finally, immediately prior to sentencing, the trial court denied the defendant's Motion for Post Verdict Judgment of Acquittal and Alternative Motion for New Trial. Louisiana Code of Criminal Procedure Article 873 requires a twenty-four-hour delay between the denial of a motion for new trial or a motion in arrest of judgment and the imposition of sentence. Because the defendant has not argued that his sentence is excessive on appeal and does not claim he was prejudiced by the lack of delay, we find that any error is harmless. *See State v. Roberson*, 06-1568 (La.App. 3 Cir. 5/2/07), 956 So.2d 736, *writ denied*, 07-1243 (La. 12/17/07), 970 So.2d 531.

**DECREE**

For the foregoing reasons, we affirm the defendant's convictions on all counts, affirm his sentences for aggravated burglary and conspiracy to commit aggravated burglary, vacate his sentences for armed robbery and conspiracy to commit armed robbery as indeterminate, and remand to the trial court for resentencing on those charges. The trial court is directed to inform the defendant of the correct provisions of article 930.8 and to file written proof in the record that the defendant received the notice.

**CONVICTIONS AFFIRMED. AGGRAVATED BURGLARY AND CONSPIRACY TO COMMIT AGGRAVATED BURGLARY SENTENCES AFFIRMED. ARMED ROBBERY AND CONSPIRACY TO COMMIT ARMED ROBBERY SENTENCES VACATED. REMANDED FOR RESENTENCING ON THE ARMED ROBBERY AND CONSPIRACY TO COMMIT ARMED ROBBERY CONVICTIONS, WITH INSTRUCTIONS.**